## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ARTHUR JACOB BRASS, | § | Case No. 21-60025 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| VITOL INC. | § | |
| | § | |
| v. | § | Adversary No. 21-06006 |
| | § | |
| ARTHUR JACOB BRASS | § | |

## FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS

Vitol Inc. (the "**Vitol**" or "**Plaintiff**") files this amended adversary complaint against Arthur Jacob Brass ("**Brass**" or "**Debtor**") and, in support thereof, would respectfully show this Court as follows:

### I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).

2.      This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter final judgment on the merits of this case.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409 based on the pendency of the above-captioned bankruptcy case in this Court.

### II.  PARTIES

4.      Plaintiff Vitol Inc. is a Delaware corporation with its principal place of business at 2925 Richmond Avenue, Houston, Texas 77098. Plaintiff may be contacted through its undersigned counsel.

5.      Defendant is the individual Debtor in the above-referenced chapter 7 case. The Debtor was served with summons and a copy of the Original Complaint on July 13, 2021.

### III.  FACTUAL ALLEGATIONS

6.      Vitol is an energy and commodities company that ships and trades crude oil and other related products. Gulf Coast Asphalt Company ("**GCAC**") marketed and traded asphalt and other related products for sale to third parties. The Debtor is the President of GCAC and owns 50% of GCAC through his entity Trifinery, Inc. ("**Trifinery**"); GCAC's other owner is the Debtor's mother Joyce Brass. GCAC and Trifinery shared a principal place of business in Houston, Texas. Brass maintained complete corporate and financial control over GCAC and often conducted GCAC business through his personal email address: aj@abrass.com.

7.      In 2017, Vitol and Brass entered discussions about entering into a profit-sharing joint marketing agreement to buy and sell asphalt between Vitol and a to-be-created entity. Although the joint venture ultimately did not materialize, Vitol separately agreed to finance GCAC's operations, including the purchase and storage of asphalt, on an interim basis while Brass looked for another counterparty interested in a joint marketing agreement with GCAC. Brass represented that he would remit to Vitol the proceeds of the sale of asphalt and other goods purchased with Vitol's money. Brass did not honor this obligation. On information and belief, Brass never intended to honor this obligation as evidenced by his actions in the transfer the funds of the sale of asphalt and other items to places other than Vitol.

8.      Vitol entered into this interim agreement because of representations made by Brass. Brass made oral representations that he would sell asphalt and other commodities purchased by Vitol and that he would return the funds from the sale of these commodities to Vitol. In August 2017, Brass sent Vitol an outline of the terms of this financing agreement wherein Brass represented that Vitol's funds would be used for the limited purpose of bridge financing and

hedging services and Brass committed to repay the amounts Vitol loaned with interest. The financing agreement was not a profit sharing agreement. Vitol also provided GCAC with other funds necessary for its operations, including freight, demurrage, inspections, storage, hedging, and other related costs. Brass, acting through GCAC, agreed to and accepted these benefits while committing to repay Vitol with interest for the funds received. Vitol relied on Brass's representations that GCAC would pay for all expenses incurred by Vitol when Vitol decided to extend GCAC funds for its operations.

9.     Unbeknownst to Vitol, GCAC was insolvent during the pendency of the interim agreement. The financing from Vitol was GCAC's only source of working capital and its trading facilitated by Vitol was GCAC's only line of business. In fact, on June 30, 2017—only days before Vitol and GCAC first began working together under the interim financing agreement—GCAC's debts and liabilities were nearly double its assets.

10.    Brass never intended to make GCAC perform its obligations under the interim agreement. After inducing Vitol into a business relationship with promises to fully reimburse Vitol for its services, Brass and GCAC refused to pay amounts justly due to Vitol. After the parties wound up the interim financing arrangement, GCAC and Brass owed Vitol at least $14,793,947 for the funds and services Vitol extended. During this interim financing arrangement, GCAC received funds from third parties for the sale of the asphalt that Vitol purchased; instead of using this money to repay Vitol as agreed between the parties, Brass and other members of GCAC used these proceeds for personal purchases.

11.    Brass siphoned funds Vitol provided to GCAC for his personal use and treated GCAC as his personal bank account. Brass alone had complete authority over GCAC's finances since at least 2017. This complete authority included the ability to take out money from GCAC as

an undocumented loan with impunity and regardless of GCAC's financial situation. During the course of the interim financing arrangement with Vitol, Brass caused GCAC to transfer to both himself and his mother millions of dollars in undocumented and evergreen loans. But these transfers were loans in name only; GCAC did not have any written agreements for these loans to Brass and his mother and there were no recorded repayment terms, due dates, or interest rates. Brass used this money to pay his home mortgage and his credit card, among other personal expenses. Brass also directed GCAC to directly pay hundreds of thousands of dollars to the contractor building Brass's multi-million dollar vacation home, among other Brass personal expenses supported by GCAC. At the time, GCAC did not have sufficient wherewithal to repay Vitol, but Brass took the money for himself and his family with no regard for the representations he made to Vitol and GCAC's obligations under the agreement.

12.     In May 2018, GCAC sued Vitol. Vitol then counter-sued GCAC, Trifinery, and Brass and asserted claims of, among others, fraud, conversion, alter ego, and fraudulent transfers to recover the at least $14,793,947 that had not been repaid to Vitol.

13.     The parties reached an initial settlement in September 2020, which required Brass, GCAC, and Trifinery to pay Vitol $8 million over the course of two payments. Brass, GCAC, and Trifinery, however, never intended to perform under the initial settlement agreement. In fact, Brass, GCAC, and Trifinery breached the initial settlement agreement by not making the first $1.5 million payment due to Vitol by October 15, 2020, which resulted in a failure of consideration. Brass claimed that the payment was delayed by some issue with the bank wire and promised to pay the following day. The money, however, never arrived. The settlement was undone by Brass's failure to perform, and the parties proceeded toward trial.

14.     On the eve of the reset trial, the parties reached a new settlement agreement and Brass, GCAC, and Trifinery accepted joint and several liability through an agreed judgment. On November 20, 2020 (the "**Judgment Date**"), the 295th Judicial District Court of Harris County, Texas entered an Agreed Final Judgment (the "**Judgment**") in Cause No. 2018-31578 in favor of Vitol against Brass, GCAC, and Trifinery. A true and correct copy of that Judgment is attached hereto as **Exhibit A-1** and is fully incorporated herein by reference. The Judgment awarded damages to Vitol in the amount of $10,000,000 jointly and severally against Brass, GCAC, and Trifinery and authorized post-judgment interest at 5% per annum from the Judgment Date until the award is satisfied. Neither Brass nor GCAC nor Trifinery satisfied the Judgment. The entire Judgment remains due and owing to Vitol along with post-judgment interest.

15.     Unfortunately, Brass again induced Vitol to settle the lawsuit without any intention of performing his obligations. The pre-settlement representations Brass made to Vitol regarding the accessibility of funds available to satisfy the judgment evidence that Brass never intended to perform his obligations. Specifically, Brass represented to Vitol that he had a $1.5 million dollar certificate of deposit, which he could use to pay part of the Judgment. In actuality, Brass had already pledged the entire certificate of deposit as security for a maxed out line of credit. Vitol discovered Brass's misrepresentations in post-judgment discovery when Vitol served a writ of garnishment on the bank holding the certificate. Brass also did not disclose the extensive other debts he had when he represented to Vitol that he was able to satisfy the Judgment.

16.     Vitol undertook extensive efforts to collect on the Judgment, but Brass refused to pay anything on the Judgment or to communicate, provide requested documents, or appear for deposition.

17.     For example, Vitol served Brass with discovery requests relating to assets available to satisfy the Judgment, but he did not substantively respond whatsoever. Instead, Brass gave identical, deflecting answers for each response and did not provide a single responsive document. Even after the District Court ordered Brass to respond to Vitol's requests following Vitol's Motion to Compel, he refused to do so. Brass also failed to appear for a post-judgment deposition despite assurances he would be available to be deposed.

18.     Vitol also diligently pursued other available post-judgment remedies, but was stifled by Brass's efforts to obstruct collection. Vitol sought writs of execution, multiple charging orders, and multiple writs of garnishment. But without discovery on the location of Brass's assets, Vitol was unable to collect anything on the Judgment. Shortly before filing for bankruptcy, Brass revealed that he kept large sums of money in his wife's accounts, including amounts traceable to the funding Vitol provided GCAC through the interim financing arrangement. Specifically, Brass indicated he moved some of the proceeds from sale of his vacation house—directly paid for in part by GCAC while Vitol was financing GCAC's operations—into his wife's account.

19.      From the Judgment Date to present Vitol has received no money or other consideration in satisfaction of the Judgment.

20.     Arthur Jacob Brass filed his voluntary petition for bankruptcy on March 26, 2021 (the "**Petition Date**"). GCAC and Trifinery filed for bankruptcy the same date.

## Alter Ego

21.     Upon information and belief: (i) the Debtor used GCAC as an alter ego for his own illegitimate and fraudulent purposes; (ii) GCAC, the Debtor, and associated entities and individuals comingled funds and ignored corporate distinctions; (iii) at the Debtor's direction through his role as President, beneficial owner, controller of the day-to-day operations, and de facto member of

GCAC with complete control over GCAC's finances, the Debtor used GCAC to funnel millions of dollars to the Debtor and/or other insiders/related entities with intent to hinder, delay, or defraud GCAC's creditors, including Vitol; and (iv) the funds the Debtor misappropriated are traceable to transactions financed by Vitol and were used by the Debtor for his own direct and personal benefit and to shield GCAC's assets from collection.

## IV.  CLAIMS

**COUNT ONE:** **Non-Dischargeability of All Debts Under 11 U.S.C. § 523(a)(2)(A)**

22.     Plaintiff re-alleges all of the preceding paragraphs as if fully incorporated herein.

23.     Debtor obtained money from Vitol via false pretenses, false representations, and/or actual fraud.

24.     As a proximate result of the Debtor's actions, Vitol suffered damages in the minimum amount of $10,000,000.

25.     The damages Vitol suffered, including compensatory and punitive damages, are not dischargeable under 11 U.S.C. § 523(a)(2)(A).

**COUNT TWO:** **Non-Dischargeability of All Debts Under 11 U.S.C. § 523(a)(4)**

26.     Plaintiff re-alleges all of the preceding paragraphs as if fully incorporated herein.

27.     The Debtor owed fiduciary obligations to Vitol arising from their business arrangement, GCAC's insolvency, or other relationships.

28.      The Debtor breached those fiduciary obligations through his specific actions described above.

29.     As a proximate result of the Debtor's breach of his duty, Vitol suffered damages in the minimum amount of $10,000,000.

30.     The Debtor lawfully obtained property belonging to Vitol by selling asphalt and related products purchased by Vitol.

31.     The Debtor appropriated those lawfully obtained funds for his own personal use or benefit with fraudulent intent.

32.     As a proximate result of the Debtor's actions, Vitol suffered damages in the minimum amount of $10,000,000.

33.     The damages Vitol suffered, including compensatory and punitive damages, are not dischargeable under 11 U.S.C. § 523(a)(4).

## COUNT THREE:  Non-Dischargeability of All Debts Under 11 U.S.C. § 523(a)(6)

34.     Plaintiff re-alleges and incorporate the preceding paragraphs.

35.     The Debtor willfully and maliciously caused injury to Vitol through his specific actions described above.

36.     There was an objective substantial certainty of harm to Vitol from the Debtor's actions, and/or the Debtor acted with a subjective motive to cause harm to Vitol.

37.     As a proximate result of the Debtor's actions, Vitol suffered damages in the minimum amount of $10,000,000.

38.     The damages Vitol suffered, including compensatory and punitive damages, are not dischargeable under 11 U.S.C. § 523(a)(6).

## CONDITIONS PRECEDENT

39.     All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived.

## PRAYER

In light of the foregoing, Plaintiff prays for judgment against the Debtor Arthur Jacob Brass, and that the Court award Plaintiff the following relief:

a.      The entry of judgment in favor of the Plaintiff awarding compensatory damages in an amount to be determined at trial, interest on such damages, and punitive and exemplary damages in an amount determined by the trier of fact;

b.      The entry of an order determining that the debts the Debtor Arthur Jacob Brass owes to Vitol Inc. are nondischargeable and that the discharge, if ultimately granted in this case, shall not discharge the debts Arthur Jacob Brass owes to Vitol, Inc.;

c.      That the Court enter a judgment awarding Plaintiff its attorneys' fees and expenses pursuant to 28 U.S.C. §§ 2201, 2202 or other applicable law;

d.      That Plaintiff recovers costs of court, prejudgment interest, and post-judgment interest at the maximum rate allowed by law; and

e.      Such other and further relief, both special and general, at law and in equity, to which Plaintiff Vitol Inc. may show itself to be justly entitled.

Dated:  **October 6, 2021.**

Respectfully submitted,

By: */s/ Keith M. Aurzada*
Keith M. Aurzada (SBN 24009880)
Lindsey L. Robin (SBN 24091422)
Devan J. Dal Col (SBN 24116244)
**REED SMITH LLP**
2501 N. Harwood, Suite 1500
Dallas, Texas 75201
T:  469.680.4200
F:  469.680.4299
kaurzada@reedsmith.com
lrobin@reedsmith.com
ddalcol@reedsmith.com

and

Michael H. Bernick (SBN 24078277)
Mason W. Malpass (SBN 24109502)
**REED SMITH LLP**
811 Main Street, Suite 1700
Houston, TX 77002
T:  713.469.3834
F:  713.469.3899
mbernick@reedsmith.com
mmalpass@reedsmith.com

*Attorneys for Vitol Inc.*