United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 24, 2022
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 21-60025 |
| ARTHUR JACOB BRASS, | § § | CHAPTER 7 |
| Debtor. | § § | |
| VITOL INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | ADVERSARY NO. 21-06006 |
| ARTHUR JACOB BRASS, | § § | |
| Defendant. | § § | |

**ORDER GRANTING IN PART AND DENYING IN PART
<u>MOTION FOR SUMMARY JUDGMENT</u>
(RE: DOCKET NO. 58)**

  Arthur Brass seeks summary judgment on Vitol Inc.'s complaint to determine the dischargeability of debt under Sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code. Brass argues that Vitol released fraud and other related tort claims supporting its complaint under a prepetition settlement agreement approved by a Texas state court. Brass also argues that summary judgment on Vitol's Section 523(a)(4) claim is appropriate because he did not act in a "fiduciary capacity." Finally, Brass argues that summary judgment is warranted because the Texas statute of frauds prohibits Vitol from introducing evidence about an alleged loan supporting Vitol's debt claim. After careful consideration, the Court denies summary judgment as to Count 1 (Section 523(a)(2)(A)), Count 2 (Section 523(a)(4) (embezzlement)), and Count 3 (Section 523(a)(6)). But summary judgment is granted as to Count 2 (Section 523(a)(4) (fraud while acting in a fiduciary capacity)).

## Background

Vitol, Brass, and Gulf Coast Asphalt Company ("**GCAC**"), an entity affiliated with Brass, litigated in a Texas state court before this bankruptcy case started. Vitol alleged, among other things, that Brass fraudulently siphoned $15 million that Vitol financed to GCAC. The parties settled before trial. The Settlement Agreement stated that Brass would pay Vitol $10 million and Vitol released "any claim or causes of action" . . . "including but not limited to claims . . . for fraud, defamation, and intentional or negligent misrepresentation," related to the transactions and acts alleged in the litigation—except obligations related to the Settlement Agreement.[1] The Settlement Agreement included an Agreed Final Judgment for $10 million, which the state court approved in November 2020.[2]

Brass never paid Vitol and later filed a voluntary chapter 7 bankruptcy case in March 2021. In July 2021, Vitol filed a complaint to determine the dischargeability of debt and a first amended complaint in October 2021.[3] Vitol reiterated its state court allegations.[4] Vitol also alleged that Brass never paid the settlement amount—and never intended to do so—and requested an order stating that the $10 million is nondischargeable under Sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code.[5] In April 2022, Brass moved for summary judgment.[6]

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction under 28 U.S.C. § 1334. The parties' express and implied consent also provides this Court constitutional authority to enter a final judgment under *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015) and *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

---

[1] Settlement Agreement, Adv. No. 21-06006, Docket No. 58, Ex. 58-2.

[2] Agreed Final Judgment, Adv. No. 21-06006, Docket No. 58, Ex. 58-5.

[3] Am. Compl., Adv. No. 21-06006, Docket No. 58, Ex. 58-1.

[4] *Id.* ¶¶ 6–11.

[5] *Id.* ¶¶ 14–15, 22–38.

[6] Mot. Summ. J., Adv. No. 21-06006, Docket No. 58.

<u>Analysis</u>

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. FED. R. BANKR. P. 7056. Brass is entitled to summary judgment if he shows "that there is no genuine dispute as to any material fact" and he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A 'material' fact is one 'that might affect the outcome of the suit under governing law.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A factual dispute is genuine if the evidence shows that a reasonable factfinder could return a verdict for the non-movant. *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019). In determining whether summary judgment is appropriate, all inferences are drawn in Vitol's favor. *Id.* If, however, the record could not lead a rational trier of fact to find for the non-movant, summary judgment is appropriate. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where, as here, summary judgment turns, in part, on contractual interpretation, an unambiguous contract does not present a genuine dispute of material fact. *See Vanguard Operating, LLC v. Klein (In re Vanguard Nat. Res., LLC)*, 624 B.R. 400, 415 (Bankr. S.D. Tex. 2020) (citing *Cooper Indus., LLC v. Precision Castparts Corp.*, No. H-15-0576, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016)); *see also Amoco Prod. Co. v. Tex. Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999) ("In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment.").

Brass argues that summary judgment is appropriate because the Settlement Agreement operated as a novation substituting Vitol's prepetition litigation claims with a new $10 million contract claim.[7] And Vitol released its fraud and related tort claims under the Settlement Agreement.[8] Thus, Vitol only holds a dischargeable contract claim related to nonpayment under the Settlement Agreement.[9] Brass also argues that he never acted in a "fiduciary capacity" with Vitol, therefore, Vitol can't prove the debt is nondischargeable under Section 523(a)(4).[10] Finally, Brass argues

---

[7] *Id.* ¶¶ 31–41.

[8] *Id.* at 2.

[9] *Id.* ¶¶ 33–34.

[10] *Id.* ¶¶ 42–46.

that Vitol's claims are based on an alleged loan.[11] But, according to Brass, GCAC and Brass never signed a loan agreement and the statute of frauds under Texas Business & Commerce Code Section 26.02(b) prohibits Vitol from introducing evidence of any alleged loan.[12] Vitol counters that the Settlement Agreement does not preclude the Court from considering the conduct alleged in the prepetition litigation and Brass's statute of frauds argument has no merit.[13]

The Court must first decide (i) whether the Agreed Final Judgment established the dischargeability of Vitol's debt in bankruptcy and (ii) whether the Settlement Agreement operated as a novation that deprived Vitol of a nondischargeable debt determination against Brass. For the reasons stated below, the answer to each of these issues is no.

## **The Agreed Final Judgment**

Summary judgment is not warranted based on the Agreed Final Judgment. The Agreed Final Judgment stated that the Texas state court was informed that all matters between GCAC, Vitol, Brass, and another party were resolved and ordered entry of a $10 million judgment for Vitol against Brass and related parties.[14]

A party may invoke collateral estoppel in a bankruptcy adversary proceeding to establish that a debt is dischargeable or nondischargeable. *See Grogan v. Garner,* 498 U.S. 279, 285 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). A party "may invoke collateral estoppel in certain circumstances to bar relitigating issues relevant to dischargeability, although the bankruptcy court retains jurisdiction to ultimately determine the dischargeability of the debt." *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996).

A Texas state court entered the Agreed Final Judgment, so the Court applies Texas rules of issue preclusion. *See Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 F. App'x 342, 345 (5th Cir. 2010). Under Texas law, collateral estoppel bars a party from relitigating issues when "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *John G. & Marie Stella Kenedy Mem'l Found. v.*

---

[11] *Id.* ¶ 48.

[12] *Id.* ¶¶ 49−56.

[13] Opp'n Resp. to Mot. Summ. J., Adv. No. 21-06006, Docket No. 65, ¶¶ 17–20, 22.

[14] Agreed Final Judgment.

4

*Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002). The Agreed Final Judgment doesn't evidence what facts were essential to the judgment and the facts were never fully and fairly litigated. So collateral estoppel does not apply here.

The Agreed Final Judgment itself also doesn't preclude Vitol from arguing fraud or any other issue related to nondischargeability of debt in this case. *See Brown v. Felsen*, 442 U.S. 127, 133–35 (1979). In *Brown*, the Supreme Court held that a consent judgment settling state court claims didn't prevent a creditor from seeking a nondischargeability determination based on fraud. *Id.* If the consent judgment doesn't identify the causes of action or provide specific factual findings about settling fraud claims, the creditor may still seek a nondischargeability determination based on fraud. *Id.* And although claim preclusion would bar a creditor from further pursuing state court litigation, it doesn't prevent the bankruptcy court from looking beyond the state-court record and the documents terminating the state-court proceeding to decide whether the debt was for money obtained by fraud. *Id.* at 138–39. "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Brown*, 442 U.S. at 138. Thus, summary judgment is not warranted based on the Agreed Final Judgment.

## The Settlement Agreement

The next question is whether the releases in the Settlement Agreement preclude Vitol from seeking a determination about the nondischargeability of debt in this case. *Archer v. Warner*, 538 U.S. 314 (2003), supplies the answer. The Archers sued the Warners for fraud relating to the sale of a business. *Id.* at 317. The parties ultimately entered into a settlement agreement providing that the Archers would release the Warners from "any and all claims" related to the litigation in exchange for a $200,000 payment, a $100,000 promissory note, and related instruments. *Id.* Like the Settlement Agreement, the Warners' payment obligations under the settlement agreement were carved out of the releases. *Id.* The Warners didn't make a payment on the promissory note and later filed for bankruptcy. *Id.* at 317–18. The Archers sought a determination that the promissory note debt was nondischargeable under Section 523(a)(2)(A). *Id.* at 318. The bankruptcy court, district court, and the Fourth Circuit Court of Appeals found the debt dischargeable. *Id.* The lower courts held that the settlement agreement, releases, and promissory note worked a kind of novation that replaced the original debt based on a fraud claim with a new dischargeable debt for money under the settlement agreement. *Id.*

The Supreme Court reversed. The Court agreed that the settlement agreement and promissory note coupled with broad releases left only one debt for money promised in the settlement agreement, but that didn't end the Court's

5

inquiry. *Id.* at 318–19. Instead, the debt under the settlement agreement could amount to a nondischargeable debt based on fraud. *Id.* at 319. The Court explained that its decision reflected Congressional intent:

> "Congress [through the Bankruptcy Code] intended the fullest possible inquiry to ensure that all debts arising out of fraud are excepted from discharge, no matter what their form. Congress also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court when nondischargeability concerns are not directly in issue and neither party has a full incentive to litigate them."

*Id.* at 321.

The Court also held that the only difference between *Brown* and *Archer* was that the debt in *Archer* was embodied in a settlement, not in a stipulation and consent judgment. *Id.* at 321.

Courts have applied the *Brown* and *Archer* holdings to other exceptions under Section 523(a). *See, e.g.*, *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322–23 (2d Cir. 2003) (applying *Archer* to Section 523(a)(4)); *114 Kimbell Square, Ltd. v. Ritter*, No. 3:05-CV-2363-L, 2007 WL 1660676, at *3−6 (N.D. Tex. June 8, 2007) (applying *Archer* and *Brown* to Section 523(a)(2), (a)(4), and (a)(6)); *Gilley v. S.E.C.*, No. 1:13CV916, 2014 WL 11497958, at *3−6 (Bankr. M.D.N.C. June 3, 2014) (applying *Archer* and *Brown* to Section 523(a)(19)).

The Supreme Court's holdings in *Brown* and *Archer* require this Court to analyze the Settlement Agreement to determine whether Vitol may seek a determination about the dischargeability of the $10 million debt. Paragraph 1 of the Settlement Agreement generally states that the parties desired to settle all claims asserted in the lawsuit "solely to avoid the expense of further investigation or litigation."[15] Thus, the Settlement Agreement converted Vitol's unliquidated claims to a fixed liquidated $10 million debt. But just like the Agreed Final Judgment, the Settlement Agreement contains nothing specific about the parties' intent to specifically settle fraud or other tort claims. And, as in *Archer*, Vitol's general release alone does not affect a final determination about Vitol's debt in bankruptcy.[16] *Archer*, 538 U.S. at 319–22. Thus, the Settlement Agreement does not

---

[15] Settlement Agreement, at AB2, ¶ 1.

[16] The Settlement Agreement releasing any "claims or causes of action" . . . "including but not limited to claims . . . for fraud, defamation, and intentional or negligent misrepresentation," rather than the *Archer* settlement agreement releasing "any and all claims" without specifically listing fraud claims

preclude Vitol from arguing that the $10 million debt is a nondischargeable debt based on fraud or any other related tort claim. Summary judgment is denied based on Brass's novation argument about the Settlement Agreement.

### Section 523(a)(4)

Vitol alleges Brass committed fraud while acting as a fiduciary for GCAC. Section 523(a)(4) denies the debtor a discharge from debts obtained "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Fraud and defalcation are modified by "while acting in a fiduciary capacity." But a fiduciary relationship is not required for nondischargeability under embezzlement or larceny. *See Int'l Beauty Prods. v. Beveridge (In re Beveridge)*, 416 B.R. 552, 570 (Bankr. N.D. Tex. 2009) (citing *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)) ("The phrase 'fiduciary capacity' only modifies fraud and defalcation; therefore, a debt may be held non-dischargeable for embezzlement or larceny if the debtor was not a fiduciary.").

Determining whether a debtor committed fraud or defalcation while acting in a fiduciary capacity is a two-step process. *See, e.g.*, *Michelena v. Michelena (In re Michelena)*, No. 19-07009, 2022 WL 1815205, at *8 (Bankr. S.D. Tex. June 2, 2022). First, the fiduciary relationship must have been created before the particular transaction creating the debt. *Id*. Second, the fraud or defalcation must occur within the fiduciary relationship. *Id*.

For the reasons stated above, Vitol isn't precluded from seeking a determination about the nondischargeability of a debt based on Brass's novation argument. *See Archer,* 538 U.S. at 323; *Brown*, 442 U.S. at 138. But summary judgment is granted on Vitol's nondischargeability of debt claim based on fraud while acting in a fiduciary capacity. Federal law determines what constitutes a fiduciary capacity under Section 523(a)(4). *In re Miller,* 156 F.3d at 602 ("[T]he definition of 'fiduciary' under § 523(a)(4) is controlled by federal common law rather than Texas law . . . ."). Under Section 523(a)(4), a "fiduciary" involves express or

---

does not change the result here. A textualist analysis of either produces the same result. That is because the release of "and any all claims" in *Archer* is broad enough on its own to encompass fraud and other tort claims. Adding "including but not limited to" in the release section of the Settlement Agreement only provided examples of the already broad release of "claims and causes of action." *See Fed. Land Bank of St. Paul v. Bismark Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132–33 (2012) (Section 15. Presumption of the Nonexclusive "Include"). The release here is no broader than the release in *Archer*.

7

technical trusts. *Id.* (quoting *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998)).

Vitol alleges that Brass owed it fiduciary duties arising from their business arrangement, GCAC's alleged insolvency, or "other relationships."[17] There is no evidence of a cognizable fiduciary duty owed by Brass to Vitol for purposes of Section 523(a)(4). Thus, summary judgment is granted on Vitol's nondischargeability of debt claim based on fraud while acting in a fiduciary duty.

But Vitol may still seek a determination about the nondischargeability of debt under Section 523(a)(4) based on embezzlement.[18] *Beveridge*, 416 B.R. at 570 ("a debt may be held non-dischargeable for embezzlement . . . if the debtor was not a fiduciary.").

## Statute of Frauds

Brass alternatively argues that summary judgment is warranted based on the statute of frauds.[19] Brass alleges there is no evidence of a signed loan agreement between GCAC and Vitol and the statute of frauds under Texas Business & Commerce Code Section 26.02(b) prohibits Vitol from introducing evidence of any alleged loan agreement evidencing such a debt.[20] The Court denies summary judgment because Section 26.02 does not apply here.

Section 26.02(b) is limited to agreements "pursuant to which a financial institution" loans money. Tex. Bus. & Com. Code Ann. § 26.02(a)(2) (West 2002). A financial institution is defined as "a state or federally chartered bank, savings bank, savings and loan association, or credit union, a holding company, subsidiary, or affiliate of such an institution, or a lender approved by the United States Secretary of Housing and Urban Development for participation in a mortgage insurance program under the National Housing Act (12 U.S.C. Section 1701 et seq.)." *Id.* § 26.02(a)(1). Brass's argument fails because Vitol is not a "financial institution."

---

[17] Am. Compl., ¶ 27.

[18] *Id.* ¶¶ 30–31.

[19] Mot. Summ. J., ¶ 47.

[20] *Id.* ¶¶ 49–56.

Thus, for the reasons stated above, it is:

**ORDERED** that summary judgment is **DENIED** as to Count 1 (Section 523(a)(2)(A)), Count 2 (Section 523(a)(4) (embezzlement)), and Count 3 (Section 523(a)(6)); and it is further

**ORDERED** that summary judgment is **GRANTED** as to Count 2 (Section 523(a)(4) (fraud while acting in a fiduciary capacity)).

Signed:  June 24, 2022

Christopher Lopez
United States Bankruptcy Judge