IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ARTHUR JACOB BRASS, | § | Case No. 21-60025 |
| | § | |
| Debtor. | § | |
| | § | |
| VITOL INC. | § | |
| | § | |
| v. | § | Adversary No. 21-06006 |
| | § | |
| ARTHUR JACOB BRASS | § | |

**VITOL, INC.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to Local Bankruptcy Rule 7016 and Rule 16 of the Local Rules of the District Court, Vitol Inc. ("***Plaintiff***" or "***Vitol***") submits the following Proposed Findings of Fact and Conclusions of Law, as follows:

### I.   FINDINGS OF FACT

1. Vitol is an energy and commodities company that ships and trades crude oil and other related products.

2. Gulf Coast Asphalt Company, LLC ("***GCAC***") marketed and traded asphalt and other related products for sale to third parties.

3. The Debtor, Arthur J. Brass ("***Brass***"), was the president of GCAC from at least 2017 until GCAC filed for bankruptcy.

4. Brass held a 50% beneficial interest in GCAC through his 100% ownership of Trifinery, Inc. from at least 2017 until GCAC filed for bankruptcy.

5. Joyce Brass was a 50% member of GCAC from at least 2017 until GCAC filed for bankruptcy.

6. Joyce Brass is Brass' mother.

7. In 2016, Vitol and GCAC began initial discussions about entering into a joint marketing agreement to buy and sell asphalt using a to-be-created entity.

8. Although the joint venture ultimately did not materialize because the parties could not come to a meeting of the minds on the structure or operation of a joint venture, Vitol separately agreed to finance GCAC's operations on an interim basis, including the purchase and storage of asphalt, while GCAC looked for another counterparty interested in a joint marketing agreement and/or source of capital.

9. Unbeknownst to Vitol, GCAC was insolvent beginning in at least June 2017 and continuing during the pendency of the interim financing through at least January of 2018. The financing from Vitol was GCAC's only source of working capital and its trading facilitated by Vitol was GCAC's only line of business.

10. Vitol provided GCAC in excess of $65 million in financing for GCAC's operations. GCAC and Brass failed to repay Vitol at least $14,793,947 under the financing arrangement. During this interim financing arrangement, GCAC received funds from third parties for the sale of the asphalt that Vitol financed; instead of using this money to repay Vitol, Brass transferred money to himself, his creditors, his mother, his jeweler, and the company constructing his lake home.

11. From at least 2017 to the time GCAC filed for bankruptcy, Brass alone had complete authority over GCAC's finances. This complete authority included the ability to transfer money from GCAC as an undocumented loan with impunity and regardless of GCAC's financial situation. During the course of the interim financing arrangement with Vitol, Brass caused GCAC to transfer to both himself and his mother millions of dollars in undocumented and evergreen loans

(the "*Transfers*"). There is no evidence to support the notion that the Transfers were loans, and in fact, the only reasonable conclusion is that they are outright transfers.

12. The Transfers totaled not less than $8,040,525.

13. GCAC did not have any written agreements for these loans to Brass and his mother and there were no recorded repayment terms, due dates, or interest rates. Brass used this money to pay his home mortgage and his credit card, among other personal expenses. Brass also directed GCAC to directly pay hundreds of thousands of dollars to the contractor building Brass's multi-million dollar vacation home, among other Brass personal expenses supported by GCAC. At the time, GCAC did not have sufficient wherewithal to repay Vitol.

14. Brass intentionally failed to disclose the Transfers in his bankruptcy schedules and statement of financial affairs and failed to disclose the Transfers in GCAC's bankruptcy schedules and statement of financial affairs. Brass was the signatory on the GCAC bankruptcy schedules.

15. Brass did not seek to recover the Transfers before he and GCAC filed for bankruptcy.

16. Each of the Transfers was made while Brass and GCAC were defendants in a lawsuit filed by Superior Crude Gathering, Inc. in which Brass is alleged to have defrauded Superior Crude Gathering, Inc. in connection with repayment of an interim financing arrangement.

17. The Transfers represented substantially all of GCAC's assets.

18. GCAC received nothing in exchange for the Transfers.

19. GCAC was insolvent at the time the Transfers were made.

20. The Transfers were made while GCAC was incurring and had incurred substantial debt.

21. Brass made the Transfers with the actual intent to hinder, delay, or defraud Vitol.

22. Brass personally benefitted from the Transfers.

23. GCAC was insolvent when each of the Transfers was made.

24. The financing from Vitol was GCAC's only source of working capital and its trading facilitated by Vitol was GCAC's only line of business.

25. From at least 2017 until GCAC filed for bankruptcy, Brass had complete and sole control over GCAC and Trifinery's management and finances.

26. Brass and GCAC never intended to perform under the initial settlement agreement with Vitol. In fact, Brass and GCAC breached the initial settlement agreement by not making the first $1.5 million payment due to Vitol by October 15, 2020.

27. In October 2020, Brass, Trifinery, and GCAC entered into a Confidential Settlement Agreement and Mutual Global Release which required them to pay Vitol $8 million.

28. No payments were made to Vitol pursuant to the Confidential Settlement Agreement and Mutual Global Release.

29. On November 5, 2020, Brass, Trifinery, and GCAC entered into a Second Confidential Settlement Agreement and Mutual Global Release with Vitol, pursuant to which Brass, Trifinery, and GCAC consented to the entry of an Agreed Final Judgment in the amount of $10 million plus accrued interest and attorneys' fees and expenses (the "*Agreed Judgment Debt*").

30. On November 20, 2020, the 295th Judicial District Court of Harris County, Texas entered an Agreed Final Judgment in Cause No. 2018-31578 in favor of Vitol against Brass, GCAC, and Trifinery.

31. The Agreed Final Judgment was entered jointly and severally against Brass, GCAC, and Trifinery and authorizes post-judgment interest at 5% per annum from the Judgment Date until the award is satisfied.

32. No payments have ever been made on account of the Agreed Final Judgment or the Agreed Judgment Debt.

33. The entire Agreed Judgment Debt remains due and owing to Vitol along with post-judgment interest and other costs of collection.

34. On May 10, 2018, in an effort to delay repayment of Vitol, GCAC filed a lawsuit against Vitol. In response, Vitol filed the counterclaim pursuant to which the Agreed Judgment Debt was ultimately entered.

## II.     CONCLUSIONS OF LAW

35. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper pursuant to 28 U.S.C. 1409(a). This matter constitutes a core proceeding and this Court may enter final judgment on the merits of this case.

36. The Bankruptcy Code prohibits debtors from discharging debts obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A); *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 355, 136 S. Ct. 1581, 1583 (2016).

37. The term "actual fraud" as used in 11 U.S.C. § 523(a)(2)(A) has been broadly construed to include fraudulent conveyance schemes, even when those schemes do not involve a false representation. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 355, 136 S. Ct. 1581, 1583 (2016); *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017).

38. To determine whether a debt is non-dischargeable pursuant to a fraudulent conveyance scheme requires the Court to undertake a three-step analysis as follows:

   (a) "Are there sufficient badges of fraud for this Court to find that the Debtor committed actual fraud;"

   (b) "[i]f so, was the Debtor's 'actual fraud' for his direct personal benefit;" and

      (c)    is "the Debtor's personal liability [] a non-dischargeable obligation under § 523(a)(2)(A)."

*Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017).

    39.    In determining whether a debtor acted with actual fraudulent intent, the Court may examine the following badges of fraud:

      (a)    the transfer was to an insider;

      (b)    the debtor retained possession or control of the property transferred after the transfer;

      (c)    the transfer was concealed;

      (d)    before the transfer was made was incurred, the debtor had been sued or threatened with suit;

      (e)    the transfer was of substantially all the debtor's assets;

      (f)    the debtor absconded;

      (g)    the debtor removed or concealed assets;

      (h)    the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;

      (i)    the debtor was insolvent or became insolvent shortly after the transfer was made;

      (j)    the transfer occurred shortly before or shortly after a substantial debt was incurred; and

      (k)    the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. at 719; Tex. Bus. & Com. C. 24.005.

    40.    Not all, or even a majority, of the badges of fraud must exist to find actual fraud. *In re Soza*, 542 F.3d 1060, 1066-67 (5th Cir. 2008). The presence of even a single badge of fraud may be sufficient to demonstrate actual fraud. *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017).

41. Vitol has met its burden of proof in demonstrating that the Agreed Judgment Debt or some portion thereof is a non-dischargeable obligation of Brass because Brass incurred the obligation by actual fraud. *See* 11 U.S.C. § 523(a)(2)(A); Tex. Bus. & Com. C. §§ 21.223, 24.005; *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017).

42. Vitol has met its burden of proof in demonstrating that the Agreed Judgment Debt or some portion thereof is a non-dischargeable obligation of Brass because Brass incurred the obligation by fraud by embezzling funds rightfully belonging to Vitol. *See* 11 U.S.C. § 523(a)(4); Tex. Bus. & Com. C. §§ 21.223, 24.005; *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017); *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 550 (Tex. 1998). Vitol has met its burden in this regard whether Vitol acted as a lender or a joint venture partner. The Court finds that Vitol was a lender to GCAC.

43. Vitol has met its burden of proof in demonstrating that the Agreed Judgment Debt or some portion thereof is a non-dischargeable obligation of Brass because Brass caused willful and malicious injury to Vitol. *See* 11 U.S.C. § 523(6).

Dated:  August 22, 2022

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Michael P. Cooley
Keith M. Aurzada (SBN 24009880)
Michael P. Cooley (SBN 24034388)
Bradley J. Purcell (SBN 24063965)
Lindsey L. Robin (SBN 24091422)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
kaurzada@reedsmith.com
mpcooley@reedsmith.com
bpurcell@reedsmith.com
llrobin@reedsmith.com

-and-

Michael H. Bernick (SBN 24078277)
Mason W. Malpass (SBN 24109502)
811 Main Street, Suite 1700
Houston, TX 77002
T: 713.469.3834
F: 713.469.3899
mbernick@reedsmith.com
mmalpass@reedsmith.com

*Attorneys for Vitol Inc.*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on August 22, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic notices in this case, including counsel for both Plaintiff and Defendant.

                                      */s/ Michael P. Cooley*
                                      Michael P. Cooley