IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ARTHUR JACOB BRASS | § | Case No. 21-60025 |
| | § | |
| Debtor. | § | |
| | § | |
| VITOL INC. | § | |
| | § | |
| v. | § | Adversary No. 21-06006 |
| | § | |
| ARTHUR JACOB BRASS | § | |

## JOINT PRETRIAL STATEMENT

Pursuant to Local Bankruptcy Rule 7016 and Rule 16 of the Local Rules of the District Court, Vitol Inc. ("*Plaintiff*" or "*Vitol*") and Arthur Jacob Brass ("*Defendant*", "*Brass*", or "*Debtor*") jointly submit the following Joint Pretrial Statement, as follows:

**1.   Appearance of Counsel**

**Plaintiff Vitol, Inc.**

**Reed Smith LLP**
Keith M. Aurzada (SBN 24009880)
Michael P. Cooley (SBN24034388)
Bradley J. Purcell (SBN 24063965)
Lindsey L. Robin (SBN 24091422)
2501 N. Harwood, Suite 1500
Dallas, Texas 75201
T:  469.680.4200

**Reed Smith LLP**
Michael H. Bernick (SBN 24078277)
Mason W. Malpass (SBN 24109502)
811 Main Street, Suite 1700
Houston, TX 77002
T:  713.469.3834

**Defendant Arthur J. Brass**

**Walker & Patterson P.C.**
Miriam Goott (SBN 24048846)
Johnie J Patterson
P.O. Box 61301
Houston, TX 77208-1301
T: 713.956.5577

## 2. Statement of the Case.

<u>Plaintiff's Response</u>:

In this adversary proceeding, Vitol seeks a determination from the Court that the debt owed to Vitol under that certain Agreed Final Judgment entered on November 19, 2020 (the "***Agreed Judgment***") is non-dischargeable as to Brass under the provision of one or more of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). Specifically, Vitol alleges that this debt, which is in the amount of $10,000,000 plus interest accruing under the Agreed Judgment (collectively, the "***Agreed Judgment Debt***"), is a personal and non-dischargeable obligation of Brass because it is a debt arising from: (i) false pretense, false representation, or actual fraud, including through transfers made with actual fraud as recognized in *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715 (Bankr. S.D. Tex. 2017); (ii) embezzlement of funds rightfully belonging to Vitol; and (iii) willful and malicious injury to Vitol or Vitol's property.

Brass denies all such allegations and alleges that any obligations owed to Vitol are those of Gulf Coast Asphalt Company ("***GCAC***") and/or are otherwise dischargeable.

By order entered on June 24, 2022 [Docket No. 79], the Court previously granted partial summary judgment in favor of Brass and dismissed Vitol's claim for relief under § 523(a)(4) based on fraud while acting in a fiduciary capacity.

<u>Defendant's Response</u>:

Mr. Brass denies the allegations contained in Vitol's Complaint. Vitol's Complaint is premised on the fact that Vitol alleges that it "loaned" GCAC money, and that GCAC not only failed to repay the loan, but subsequently transferred Vitol's money to Mr. Brass. Mr. Brass asserts that neither he nor GCAC ever borrowed a single penny from Vitol. Instead, Vitol and GCAC entered into a joint venture where they worked together on a nearly daily basis for six months to sell asphalt.

After agreeing to the joint venture with GCAC, and after working deals with GCAC pursuant to their joint venture, Vitol breached its agreement with GCAC when Vitol's executives learned that Vitol's UK branch had previously entered into a non-compete agreement with a third party that strictly prohibited Vitol from entering into a joint venture with GCAC to sell asphalt.

As a result of Vitol's refusal to comply with the joint venture agreement, GCAC lost significant amounts of money and sued Vitol in state court for breaching the joint venture agreement. Vitol brought counterclaims and after years of fighting, the Debtor was outlawyered and outspent by Vitol – a billion-dollar company who has endless means. As a business decision, Mr. Brass entered into an agreed judgment with Vitol in order to put an end to years of litigation and the outrageous cost of attorney's fees that Mr. Brass could no longer afford. The Agreed Judgment is the basis of the debt owed to Vitol. The Agreed Final Judgment does not include nor reference any liability on the basis of fraud.Finally, the Debtor asserts that this Court previously granted him partial summary judgment and dismissed Vitol's claim under Section 523(a)(4) based on fraud while acting in a fiduciary capacity.

### 3. Jurisdiction.

The parties agree that this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter final judgment on the merits of this adversary proceeding.

### 4. Motions.

There are no pending motions at this time.

### 5. Contentions of Parties.

Plaintiff's Contentions:

***First***, Vitol contends that the Agreed Judgment Debt is nondischargeable under § 523(a)(2) because it represents money obtained from Vitol through its reliance on Brass's false representation to Vitol that all proceeds of asphalt sales received by GCAC would be remitted directly to Vitol. In particular, Vitol contends that Brass represented to Vitol that GCAC would remit to Vitol all proceeds of asphalt and related components that Vitol provided to GCAC for sale, and that—in light of the irredeemable insolvency of GCAC and Brass's own history of transferring money freely to insiders—Brass had no intention of complying. Vitol further contends that the original damages comprising the claims that were settled in the agreed amount of the Agreed Judgment Debt arose directly from Brass's willful breach of this false promise to Vitol, and are therefore nondischargeable under § 523(a)(2).

***Second***, Vitol contends that the Agreed Judgment Debt is nondischargeable under § 523(a)(2) because it arose from Brass's actual fraud in the form of his transfer of approximately $8.9 million to himself and his mother. As recognized in *Husky*, the term "actual fraud" is not limited to misrepresentations found in traditional common law fraud, but has been more broadly construed to include "fraudulent conveyance schemes, even when those schemes do not involve a false representation."[1]

Here, the Agreed Final Judgment is nondischargeable under § 523(a)(2) because, from July 2017 to [December 2019], Brass caused GCAC to transfer approximately $8,900,000 (collectively, the "***Transfers***") to himself and to his mother as part of a fraudulent scheme to hinder, delay, or defraud Vitol. Vitol contends that Brass's fraudulent intent is evidenced by several of the traditional "badges of fraud," including—

> (1) All of the Transfers were made to or for the benefit of two insiders—himself and his mother, Joyce Brace. Brass was a GCAC insider by virtue of his position as president of GCAC and beneficial owner of 50% of the membership interest in GCAC through a wholly owned entity, Trifinery, Inc., and Joyce Brass owned the other 50% membership interest in GCAC. Brass also exercised complete control over GCAC's finances.

---

[1] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 355, 136 S. Ct. 1581, 1583 (2016).

(2)  Brass retained direct or indirect control over the Transfers as both transferor (through his control of GCAC) and transferee (as primary beneficiary of the Transfers).

(3)  Brass took various actions to conceal the Transfers, including by failing to list them in GCAC's *Schedules of Asset and Liabilities* as loans (and therefore the assets of GCAC that he contends they were) and by refusing to authenticate even basic financial records and financial statements of GCAC that would contain evidence of the Transfers. This conduct is of a piece with Brass's concealment of other assets, including several million dollars in nonexempt jewelry that was omitted from the *Schedules of Asset and Liabilities* filed in his own case.

(4) The Transfers were made while litigation was pending against GCAC and Brass, including both a lawsuit for fraud filed against them by Superior Crude Gathering, Inc. in February 2017 and the counterclaims filed against them by Vitol in litigation commenced by Brass himself in May 2018. Indeed, the pace of Transfers—which notably commenced at approximately the same time as the relationship between Vitol and GCAC—continued unabated from June 2017 until at least December 2019.

(5) The Transfers represented substantially all of GCAC's assets, totaling approximately $6.9 million—or approximately 70%—of GCAC's assets measured as of December 2018. Eventually, the Transfers totaled approximately $8.9 million.

(6) Aside from the Transfers, Brass removed and concealed other assets, including individual pieces of jewelry worth millions of dollars and insured under a Chubb Lloyd's Insurance Company of Texas insurance rider issued to Brass as insured.

(7)  Although GCAC's financial statements record the Transfers as "loans" to Brass and his mother, these alleged loans are not supported by any written agreement or promissory note nor accompanied by any terms of repayment. GCAC's failure to affirmatively claim these alleged "loans" as assets in its Schedules of Assets and Liabilities further indicates that the Transfers were in fact made for no consideration whatsoever.

(8)  As Vitol's unchallenged[2] expert will testify at trial, GCAC was insolvent at all relevant times.

(9) The Transfers were made at the same time that GCAC was incurring substantial debt to Vitol in the form of unpaid amounts accruing through GCAC's use of Vitol's credit to trade asphalt and related products.

***Third***, Vitol contends that the Agreed Judgment Debt is nondischargeable under § 523(a)(6) because it arose from Brass's embezzlement of funds entrusted to his care. In particular, Vitol contends that cash proceeds received by GCAC from the sale of asphalt provided by Vitol was expressly earmarked for Vitol's use and thus represented its property in GCAC's care. By converting those funds to his own improper uses (including to fund the

---

[2] Brass has not engaged an expert in this case to testify as to the solvency of GCAC or to challenge the conclusions of Vitol's expert.

Page 4

Transfers), Brass effectively embezzled approximately $8.9 million from Vitol. In addition, to the extent the Court should conclude that Vitol and GCAC were at any point in time participants in a joint venture, Vitol would still have had an equal right to any distributes made to the joint venture participants. Under such circumstances, to the extent Brass distributed funds to himself and not to Vitol, such distributions constitute embezzlement under § 523(a)(4).

*Fourth*, Vitol contends that the Agreed Judgment is nondischargeable under § 523(a)(6) because it arose from a willful or malicious injury to Vitol resulting from Brass's knowing breach of a clear contractual obligation to Vitol. Although there was no written contract between the parties, Vitol and GCAC (through Brass) had unequivocally agreed that GCAC would remit to Vitol all cash proceeds received by GCAC from the sale of asphalt provided by Vitol immediately upon receipt. Vitol contends that Brass knowingly caused GCAC to breach this clear contractual obligation, and that the Agreed Judgment Debt arises directly from this breach and is therefore nondischargeable under § 523(a)(6).

*Finally*, Vitol also seeks a determination that its fees and expenses incurred in pursuing this adversary proceeding, as well as pre-judgment and post-judgment interest, are a non-dischargeable obligation of Brass.

Defendant's Contentions:

**Debtor's Response to Vitol's Claim under Section 523(a)(2)**:

Vitol alleges throughout its complaint that Vitol was merely a lender who loaned GCAC money and that the basis of their relationship was that of a borrower/lender. However, there is absolutely no loan agreement that exists, neither written nor verbal. During discovery, Brass requested that Vitol produce all documents that supports Vitol's theory that Vitol "loaned" GCAC money. Not a single document or email communication was produced that shows that either party agreed to a loan.

GCAC never agreed to borrow any money from Vitol. Instead GCAC and Vitol entered into a joint venture to buy and sell asphalt, not borrow money. All of the business transactions and email communications between GCAC and Vitol clearly show that these two parties conducted business together on a nearly daily basis for a six-month period. The joint venture was simple: GCAC would market the deals for the joint venture as GCAC had the contacts and industry knowledge. Vitol would hedge and fund the transaction, and the parties would then split the profits and losses.

The evidence overwhelming shows that Vitol and GCAC worked together toward their joint venture on a nearly daily basis with each side having a specific role in the business. Vitol admits in its pleadings that during the course of its six-month business venture with GCAC, that GCAC transferred over $16 million to Vitol. These funds were transferred by GCAC to Vitol as part of the profits owed to Vitol, not as a loan repayment.

The evidence will **NOT** show that 1) a loan existed; 2) the terms of any alleged loan; 3) any actions of a lender; 4) any actions of a borrower; or 5) any attempts by Vitol to collect on an alleged loan.

Vitol and GCAC were conducting business under the terms of their joint venture until Vitol learned that its UK branch previously entered into a non-compete agreement with a third party (the Sargeant Family) which specifically prohibited Vitol from entering into any deals with third parties related to the sale of asphalt. Vitol understood that conducting business with GCAC would likely result in Vitol getting sued by the Sargeant Family for violating their non-compete. Vitol decided that they would rather breach their agreement with GCAC (a small and inconsequential player) than to breach their non-compete with the Sergeant Family who had millions of dollars invested in their deal with Vitol.

Vitol breached its agreement with GCAC which resulted in a significant loss for GCAC. In response, GCAC sued Vitol for breaching the joint venture agreement. Vitol, a billion-dollar company, hired teams of big firm attorneys and outspent Mr. Brass during litigation. In the end, Mr. Brass was forced to make a business decision and entered into an Agreed Final Judgment in order to put an end to the years of litigation and the outrageous attorney's fees that he could no longer afford. Mr. Brass merely wanted to move on with his life and Vitol wants a pound of flesh. (See Below - Paragraph 12)

**Debtor's Response to Vitol's Claim under Section 523(a)(2) - Fraud:**

Vitol contends that the Agreed Judgment Debt is nondischargeable under § 523(a)(2) because it arose from Brass's actual fraud in the form of his transfer of approximately $8.9 million to himself and his mother. First, Vitol does not have evidence to show that Vitol's money or the proceeds from Vitol's assets were transferred by GCAC to the Debtor.

Furthermore, as discussed in greater detail above, Vitol and GCAC were working together under a joint venture, not under any loan agreement. GCAC and Vitol were working together on a nearly daily basis for a six-month period buying and selling asphalt. During that time, both GCAC and Vitol were making deals with an understanding that their respective profits (and losses) would be trued up in the future. In fact, Vitol admits that they received periodic payments from GCAC to the tune of $16 million. These funds were paid by GCAC to Vitol as part of their true up, not as a repayment of some fictious loan that Vitol now claims to have had with GCAC.

Vitol refuses to admit that it had a joint venture with GCAC as that would result in further litigation for Vitol's breach of its non-compete by the Sargeant Family. Vitol cannot have it both ways. On one hand, Vitol refuses to allege that it had a joint venture as this would expose them to litigation. Instead, Vitol claims that its debt is non-dischargeable because Mr. Brass fraudulently obtained the funds it "borrowed" from Vitol. Vitol is bound by its pleadings and the factual allegations contained in their pleadings, and as a result cannot prevail under Section 523(a)(2).

**Debtor's Response to Vitol's Claim under Section 523(a)(4):**

In the Joint Pretrial statement, Vitol contends that if the Court concludes that Vitol and GCAC participated in a joint venture, then Vitol should still be entitled to any distributions made to GCAC because such distributions constitute embezzlement under § 523(a)(4).

Page 6

In its Complaint, Vitol wholly failed to plead in the alternative. Vitol never asked this Court to determine that its debt should be found to be non-dischargeable if the Court determined that it had a joint venture, and not a loan. Therefore, this issue cannot be raised for the first time at trial. Furthermore, the fact that Vitol and its team of extremely experienced and sophisticated attorneys chose not to plead in the alternative (*i.e.* that a joint venture existed) is further evidence that Vitol feared that it would be sued for violating their non-compete.

Finally, this Court already ruled in its Order on Partial Summary Judgment, that **there is no evidence of a cognizable fiduciary duty owed by Brass to Vitol for purposes of Section 523(a)(4).**

**Debtor's Response to Vitol's Claim under Section 523(a)(6):**

Vitol contends that the Agreed Judgment is nondischargeable under § 523(a)(6) because it arose from a willful or malicious injury to Vitol resulting from Brass's knowing breach of a **"clear contractual obligation to Vitol"**. Vitol alleges in its Complaint that the contractual obligation is based on an alleged loan.

In response, Brass asserts the following: 1) No written contractual obligation related to a loan exists between Vitol and GCAC; 2) No verbal agreements were made related to any loan from Vitol; 3) All of the evidence shows that the parties were conducting business together on a nearly daily basis; 4) No evidence exists of a lender attempting to collect on any alleged loan; and 5) no evidence exists that Mr. Brass "**knowingly**" breached a loan agreement that did not exist.

**Debtor's Response to Vitol's Claim for Attorney's Fees and Expenses.**

Vitol seeks a determination that it is entitled to its fees and expenses incurred in pursuing this adversary proceeding.

First, there is nothing in the Bankruptcy Code that expressly awards attorney's fees to a creditor who successfully contests the dischargeability of its claim. Furthermore, the Fifth Circuit has held that creditors are only entitled to an award of attorney's fees in bankruptcy claims if they have a contractual right to them under valid state law. *Jordan v. Se. Nat'l Bank,* 927 F.2d 221, 226-27 (5th Cir. 1991). In order for Vitol to have a claim for attorney's fees, interest and costs they must first show this Court that they have a contractual right to recover these fees under state law. Vitol admits that there is no executed contract or loan agreement with GCAC. Therefore, there is no contract under state law that could possibly provide for Vitol's request for attorney's fees, expenses or interest.

6. **Admissions of Fact.**

    a. Vitol is an energy and commodities company that ships and trades crude oil and other related products.

    b. GCAC marketed and traded asphalt and other related products for sale to third parties.

      c.      Brass was the president of GCAC from at least 2017 until GCAC filed for bankruptcy.

      d.      Brass held a 50% beneficial interest in GCAC through his 100% ownership of Trifinery, Inc. from at least 2017 until GCAC filed for bankruptcy.

      e.      Joyce Brass was a 50% member of GCAC from at least 2017 until GCAC filed for bankruptcy.

      f.      Joyce Brass is Brass's mother.

      g.      GCAC never executed any loan agreements with Vitol.

      h.      Vitol received approximately $16 million from GCAC.

      i.      In October 2020, Brass, Trifinery, and GCAC entered into a Confidential Settlement Agreement and Mutual Global Release which required them to pay Vitol $8 million.

      j.      No payments were made to Vitol pursuant to the Confidential Settlement Agreement and Mutual Global Release.

      k.      GCAC sued Vitol in state court.

      l.      On November 5, 2020, Brass, Trifinery, and GCAC entered into a Second Confidential Settlement Agreement and Mutual Global Release with Vitol, pursuant to which Brass, Trifinery, and GCAC consented to the entry of an Agreed Final Judgment in the amount of $10 million.

      m.      On November 20, 2020, the 295th Judicial District Court of Harris County, Texas entered an Agreed Final Judgment in Cause No. 2018-31578 in favor of Vitol against Brass, GCAC, and Trifinery.

      n.      The Agreed Final Judgment is in the amount of $10,000,000 jointly and severally against Brass, GCAC, and Trifinery and authorizes post-judgment interest at 5% per annum from the Judgment Date until the award is satisfied.

      o.      No payments have been made on account of the Agreed Final Judgment.

      p.      The entire Agreed Final Judgment remains due and owing to Vitol along with post-judgment interest.

**7.**      **Contested Issues of Fact.**

      a.      Vitol never loaned GCAC any money.

      b.      Vitol never loaned Brass any money.

      c.      Vitol entered into a Joint Venture with GCAC.

   d. Vitol operated under the Joint Venture with GCAC by purchasing asphalt, selling asphalt and entering into hedges as part of the Joint Venture.

   e. Vitol and GCAC communicated on a regular basis regarding the business transactions related to the purchase and sale of asphalt.

   f. Vitol and GCAC communicated on a regular basis regarding the business transactions related to hedges placed by Vitol in connection with the purchase and sale of asphalt.

   g. Vitol backed out of the Joint Venture as a result of its non-compete agreement related to its Valt deal.

   h. GCAC sustained damages as a result of Vitol backing out of the joint venture.

   i. Mr. Brass sustained damages as a result of Vitol backing out of the joint venture.

   j. Any funds transferred by GCAC to the Debtor or his mother did not belong to Vitol.

   k. The entire Agreed Final Judgment remains due and owing to Vitol along with post-judgment interest.

   l. The Agreed Final Judgment contains no admissions or references to fraud.

   m. Vitol has refused to accept payment from the Debtor to settle and satisfy the Agreed Final Judgment.

   n. Upon information and belief, all other contentions made by the parties in Part 5 above, except for those Admissions of Fact set forth in Part 6 above, are disputed issues of fact.

**8. Agreed Applicable Propositions of Law.**

None.

**9. Contested Issues of Law.**

<u>Plaintiff's Contentions:</u>

   a. Whether the Agreed Judgment Debt or any portion thereof is nondischargeable under § 523(a)(2) because it arose from a false representation. *See* 11 U.S.C. § 523(a)(2)(A).

   b. Whether the Agreed Judgment Debt or any portion thereof is nondischargeable under § 523(a)(2) because Brass incurred the obligation by actual

fraud. *See* 11 U.S.C. § 523(a)(2)(A); Tex. Bus. & Com. C. §§ 21.223, 24.005; *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017).

   c. Whether the Agreed Judgment Debt or any portion thereof is nondischargeable under § 523(a)(4) Brass incurred the obligation by embezzling funds rightfully belonging to Vitol. *See* 11 U.S.C. § 523(a)(4); Tex. Bus. & Com. C. §§ 21.223, 24.005; *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 719 (Bankr. S.D. Tex. 2017); *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 550 (Tex. 1998).

   d. Whether the Agreed Judgment Debt or any portion thereof is nondischargeable under § 523(a)(6) because it arose from a willful and malicious injury to Vitol. *See* 11 U.S.C. § 523(6).

**10. Exhibits.**

The Court has instructed the parties to file exhibit lists separately and exchange exhibits on or before 4:00 pm on August 22, 2022.

**11. Witnesses.**

The Parties have agreed to file witness lists separately on or before 4:00 pm on August 22, 2022.

**12. Settlement.**

<u>Plaintiff's Response</u>: The Parties have discussed potential mediation on multiple occasions but have not agreed to attend mediation. There are no outstanding settlement offers pending at this time. The case cannot be settled and it will have to be tried. Plaintiff disputes the accuracy of the factual contentions made in Defendant's Response below, and submits that disclosure of confidential settlement communications is not appropriate in a joint pretrial order.

<u>Defendant's Response:</u>

In order to avoid filing bankruptcy, the Debtor transferred $1.2 million (non-exempt cash) to his counsel Walker & Patterson's trust account. Debtor's counsel contacted Vitol's counsel and offered to transfer these funds to Vitol to avoid the bankruptcy filing. In response, Vitol's counsel informed Ms. Goott in writing, that they were sending a subpoena to Walker & Patterson for turnover of the funds held in its trust account.

After the bankruptcy was filed, the Debtor repeatedly asked Vitol if they would attend mediation. As late as June, 2022, the Debtor again asked Vitol to attend mediation and offered to sell his homestead and turnover the entirety of the proceeds to Vitol. Plaintiff's above response that there are *"no outstanding settlement offers pending at this time"* and that the *"Parties discussed potential mediation but have not agreed to mediation"* is misleading. In June, 2022 (the last communication regarding settlement), Vitol's counsel sent an email to Ms. Goot, and stated, *"At this time I still do not have a position from the client on your twin proposals of mediation or a possible cash settlement involving the sale of the homestead"*.

Therefore, Vitol's assertion that there is no outstanding settlement offer pending at this time in inaccurate as they never responded accepting or rejecting the Debtor's offer. Furthermore, Vitol's assertion that the parties "discussed" settlement is also misleading as Vitol never responded to the Debtor's offer to attend mediation.

Finally, Vitol's counsel previously stated that Vitol is just angry that the Debtor filed a lawsuit against Vitol in state court. Based on this comment and based on Vitol's actions over the course of this Adversary Proceeding, it is the Debtor's belief that settlement is not an option as Vitol does not want the Debtor's money. Vitol simply wants a pound of flesh.

### 13. Estimated Trial Time.

Based upon the Court's instruction at the last status conference, the parties anticipate that the trial will take two days.

### 14. Additional Materials.

None.

Dated: August 22, 2022                              Respectfully submitted,

| **REED SMITH LLP** | **WALKER & PATTERSON, P.C.** |
|---|---|
| By: /s/ *Michael P. Cooley* | By: /s/ *Miriam T. Goot* |
| Keith M. Aurzada (SBN 24009880) | Johnie Patterson (SBN 15601700) |
| Michael P. Cooley (SBN 24034388) | Miriam T. Goott (SBN 24048846) |
| Bradley J. Purcell (SBN 24063965) | P.O. Box 61301 |
| Lindsey L. Robin (SBN 24091422) | Houston, TX 77208 |
| 2850 N. Harwood Street, Suite 1500 | mgoott@walkerandpatterson.com |
| Dallas, Texas 75201 | 713.956.5577 (telephone) |
| T: 469.680.4200 | |
| F: 469.680.4299 | COUNSEL FOR DEBTOR |
| kaurzada@reedsmith.com | |
| mpcooley@reedsmith.com | |
| bpurcell@reedsmith.com | |
| lrobin@reedsmith.com | |
| | |
| and | |
| | |
| Michael H. Bernick (SBN 24078277) | |
| Mason W. Malpass (SBN 24109502) | |
| 811 Main Street, Suite 1700 | |
| Houston, TX 77002 | |
| T: 713.469.3834 | |
| F: 713.469.3899 | |
| mbernick@reedsmith.com | |
| mmalpass@reedsmith.com | |
| | |
| *Attorneys for Vitol Inc.* | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 22, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic notices in this case, including counsel for both Plaintiff and Defendant.

                                                  */s/ Michael P. Cooley*
                                                  Michael P. Cooley