IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| ARTHUR JACOB BRASS, | § | Case No. 21-60025 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| VITOL INC. | § | |
| | § | |
| v. | § | Adversary No. 21-06006 |
| | § | |
| ARTHUR JACOB BRASS | § | |

**PLAINTIFF VITOL INC.'S TRIAL BRIEF ON THE ADMISSIBILITY
OF BUSINESS RECORDS UNDER FED. R. EVID. 803(6) AND 902(11)**

Vitol Inc. (the "***Vitol***" or "***Plaintiff***") files this trial brief regarding admissibility of business

records under Fed. R. Evid. 803(6) and 902(11) and respectfully states as follows:

**I.
PROCEDURAL HISTORY**

1.      The objections to dischargeability of Defendant's $10 million debt to Plaintiff turn

in significant part on such matters as the solvency of Defendant's closely held company, Gulf

Coast Asphalt Company ("***GCAC***"), and the timing, amount, and recipient of numerous alleged

fraudulent transfers that Defendant caused GCAC to make to himself.  These issues necessarily

depend heavily on a variety of financial records, including general ledgers, bank statements, tax

returns, and the like.

2.      In a case involving the president and 50% owner of a closely held organization,

such records would ordinarily be obtained from the organization (or its principal) and authenticated

by the principal or another corporate representative.  Here, however, Mr. Brass was unwilling or

unable to authenticate any of the books and records that Vitol previously obtained from GCAC in

discovery.  Accordingly, Vitol obtained documents with accompanying business records affidavits

from seven third parties to authenticate the general ledgers, bank statements, tax returns, and other

financial records that would ordinarily have been authenticated through traditional means.

3.      Vitol submits this trial brief in support of its use of these affidavits as sufficient to

self-authenticate the corresponding records accompanying the affidavits as authorized under

Federal Rule of Evidence 902(11).

**II.**
**ARGUMENTS AND AUTHORITIES**

**A.      Business Records Overview**

4.      Fed. R. Evid. 803(6) provides an exception to the rule against hearsay for records

of regularly conducted activity kept and maintained in the regular court of business.  It states that

a record of an act, event, condition, opinion, or diagnosis is admissible if:

> (A) the record was made at or near the time by—or from information
> transmitted by—someone with knowledge; (B) the record was kept
> in the course of a regularly conducted activity of a business,
> organization, occupation, or calling, whether or not for profit; (C)
> making the record was a regular practice of that activity; (D) all
> these conditions are shown by the testimony of the custodian or
> another qualified witness, or by a certification that complies with
> Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the
> method or circumstances of preparation indicate a lack of
> trustworthiness.

Fed. R. Evid. 803(6).

5.      The rationale underlying this exception is a commonsense one: "the inherent

reliability of business records is 'supplied by systematic checking, by regularity and continuity

which produce habits of precision, by actual experience of business in relying upon them, or by a

duty to make an accurate record as part of a continuing job or occupation.'" *United States v.*

*Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (quoting *United States v. Veytia-Bravo*, 603 F.2d 1187,

1189 (5th Cir. 1979) cert. denied, 444 U.S. 1024, (1980); Fed. R. Evid. 803(6) Notes of Advisory Committee on Proposed Rules).  Put differently, we trust business records because the businesses creating those records have a naturally vested interest in the predictable, competent preparation of accurate records relating to their business activity.  Thus, "[w]hether evidence is admissible under Rule 803(6) is 'chiefly a matter of trustworthiness.'" *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001) (quoting Fed. R. Evid. 803(6) Committee Note)(citing *Mississippi River Grain Elevator, Inc. v. Bartlett & Co.,* 659 F.2d 1314, 1319 (5th Cir. 1981)).

6.     As summarized by the Fifth Circuit, the Federal Rules of Evidence allow the admission of "records of regularly conducted activity" so long as the record was (1) "made at or near the time by, or from information transmitted by, a person with knowledge," (2) "kept in the course of a regularly conducted business activity," and (3) "it was the regular practice of that business activity to make the [record]." *United States v. Ned*, 637 F.3d 562, 569 (5th Cir. 2011) (citing Fed. R. Evid. 803(6).).

7.     The admissibility of certain key categories of document as business records is discussed below.

*Email*

8.     "A party seeking to introduce an email made by an employee about a business matter under the hearsay exception under Rule 803(6) must show that the employer imposed a business duty to make and maintain such a record. Courts examine whether it was the business duty of an employee to make and maintain emails as part of his job duties and whether the employee routinely sent or received and maintained the emails." *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. H-06-1330, 2008 U.S. Dist. LEXIS 37803, at *34 (S.D. Tex. 2008) (J. Rosenthal). "Courts have held that conventional letters, memos, or notes are admissible under the business records exception if they are regularly made in furtherance of the

employer's needs and not for the personal purposes of the employee who made them." *Id*. at *33 (internal citations omitted).

9.      Accordingly, for an email to be admissible as a business record: (1) the employee must have been under a duty to make and maintain emails as part of his job function; and (2) the emails must have been made in furtherance of the employer's business.  Accordingly, while personal correspondence would not necessarily fall within this category, emails discussing the ordinary business activity of the company would. *See e.g. id.* at *36-37 (holding email admissible as business record where affidavit stated it was made and maintained in the normal course of business by a person with personal knowledge at the time of the events recorded); *Sand Storage, LLC v. Trican Well Serv., L.P.*, No. 2:13-CV-303, 2014 U.S. Dist. LEXIS 151984, at *5 n.1 (S.D. Tex. 2014) ("Plaintiff objects to the consideration of the email messages sent by Scott Berendt based on hearsay…These email messages are submitted as attachments to the Business Record Declaration of Jack Kardow and are business records admissible pursuant to Fed. R. Evid. 803(6) and are properly considered."), *report and recommendation adopted*, *2014 U.S. Dist. LEXIS 173829* (S.D. Tex. 2014);  *Hunt v. Millennium Info. Servs.*, No. H-18-1698, 2020 U.S. Dist. LEXIS 134191, at *9 (S.D. Tex. 2020) ("Hersheway established that the emails attached to her declaration were business records, and the emails provide evidence supporting Hersheway's statements in the third and fourth paragraphs. Thus, regardless of whether Hersheway can personally testify about the communications between Plaintiff and Morris, she authenticated the emails that provide the information."), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 133204 (S.D. Tex. 2020).

### Ledgers and Spreadsheets – 903(6) and 1006

10.      Under Rule 803(6), computer data compilations—such as general ledgers and spreadsheets compiling data related to business activity—may be business records themselves, and

should be treated as any other record of regularly conducted activity. In the Fifth Circuit, such computer business records are admissible so long as three conditions are met: (1) "[t]he records must be kept pursuant to some routine procedure designed to assure their accuracy," (2) "they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive)"; and (3) "they must not themselves be mere accumulations of hearsay or uninformed opinion." *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, No. H-08-2336, 2011 U.S. Dist. LEXIS 155623, at *22-23 (S.D. Tex. 2011) (quoting *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980)).

11.     Thus for example, in *St. Michaels* the court denied a motion to strike a spreadsheet attached to the defendant's motion for summary judgment because it was accompanied by a business records affidavit from one of the defendant's executives. *Id.* at *21. The objecting party argued that because the executive did not prepare the spreadsheet himself, the executive could not attest to the accuracy of the spreadsheet. *Id.* at *24. The court rejected this argument because "[a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records" and thus denied the objection under the business records exception. *St. Michael's*, 2011 U.S. Dist. LEXIS 155623 at *24-25 (quoting *Rosenberg*, 624 F.2d at 665). In the Fifth Circuit,

> there is no requirement that the witness who lays the foundation for the admission of a record under the business records exception to the hearsay rule be the author of the record or be able to personally attest to its accuracy. Rather, a qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of the business records exception are met.

*Ned*, 637 F.3d at 569-70 (internal citations and quotations omitted). The Fifth Circuit has also held it was appropriate to admit a ledger of city revenues through a city clerk to prove the amount

of funds obtained from the federal government, even though the clerk did not go through the underlying transaction documents showing the source of the funds. *United States v. Smith*, 804 F.3d 724, 728-29 (5th Cir. 2015). The court found that the clerk did not need to be able to testify to the accuracy of the ledger for it to qualify as a business record and that arguments regarding accuracy went to the weight, not the admissibility of the ledger. *Id*. at 729-30.

### Records Prepared by an Outsider

12.     Finally, although business records kept by one organization but prepared by another outside entity can raise concerns of "hearsay within hearsay," the Fifth Circuit has concluded that business records prepared by an outsider do *not* create such a double hearsay problem if the records are relied upon by the organization for the conduct of its own business.  "If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6)." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991).  "There is no requirement that the records be created by the business having custody of them." *Duncan*, 919 F.2d at 986 (citing to *Miss. River Grain Elevator*, 659 F.2d at 1319; *Veytia-Bravo*, 603 F.2d at 1189).

13.     Accordingly, "Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations. Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *Cline v. Deutsche Bank Nat'l Tr. Co.*, 2015 U.S. Dist. LEXIS 86269, at *6-8 (N.D. Tex. 2015); *see also Duncan*, 919 F.2d at 986 (holding that an insurance company's business records compiled from hospital records that were themselves business records were admissible); *see also Miss. River Grain Elevator*, 659 F.2d at 1318-19 (holding that origin weight certificates prepared by outside agencies represented business records of the grain trader for whom they were prepared); *United*

*States v. Lawrence*, 276 F.3d 193, 196 (5th Cir. 2001) (holding that student loan records and promissory notes in the custody of the Department of Education represented business records of that agency).

14.      In short, "the primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced . . . The district court has great latitude on the issue of trustworthiness." *United States v. Duncan*, 919 F.2d at 986-87.

**B.      Admissibility of Business Records without a Sponsoring Witness**

15.      Under Fed. R. Evid. 902(11), records of a regularly conducted activities—i.e., business records—are self-authenticating if the proponent provides a certificate showing the document meets the requirements of the business records exception to hearsay under Fed. R. Evid. 803(6). "The rationale underlying this exception to the rule against hearsay is that the inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *Duncan*, 919 F.2d at 986 (quoting *Veytia-Bravo*, 603 F.2d at 1189; Fed. R .Evid. 803(6) (Notes of Advisory Committee on Proposed Rules.)).

16.      Accordingly, "certificates from a records custodian that 'track the language of Rule 803(6) nearly word for word' render the records self-authenticating." *United States v. Oladimeji Seun Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (citing *Zapata Off-Shore*, 939 F.2d at 272); *see also United States v. Towns*, 718 F.3d 404, 409 (5th Cir. 2013) ("A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6)."). When accompanied by such a custodial certification, ***the live testimony of the custodian or another witness is not required to admit the records***. *Oladimeji*, 917 F.3d at 402 ("The Federal Rules of Evidence except business records from hearsay. To qualify, a records

Page 7

custodian with knowledge must testify unless they're 'self-authenticating.' Records are self-authenticating if they include a custodian certification that the records 'meet[] the requirements of Rule 803(6)(A)-(C).'"); *see also United States v. Osuagwu*, 858 F. App'x 137, 145 (5th Cir. 2021) ("the Federal Rules of Evidence provide that certified domestic records of regularly conducted activity are self-authenticating and so may be admitted without the trial testimony of a qualified witness. *See* Fed. R. Evid. 803(6)(D), 902(11).").

17.    To qualify to admit records without testimony, the certification must: (1) be made by a custodian or one who can explain the record keeping system of the organization; (2) state the records were "made at or near the time" by a person with knowledge; (3) state the records were kept in the course of a regularly conducted business activity; and (4) state that it was the regular practice of that business activity to make that record.  If an affidavit of certification meets these elements, the records are admissible without any live testimony and are not hearsay. *See Oladimeji*, 917 F.3d at 402.

*18.*    Rule 902(11) also requires the proponent to provide "reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection" prior to trial. The Fifth Circuit has held that five days' notice before trial is reasonable. *United States v. Daniels*, 723 F.3d 562, 581 (5th Cir. 2013) (citing  *United States v. Olguin*, 643 F.3d 384, 391 (5th Cir. 2011) ("*Olguin* stands for the more general proposition that five days' notice is sufficient under Rule 902(11).").  In *Daniels*, the court even held that it was not an abuse of discretion to admit records under 902(11) where notice was given mid-trial that the proponent intended to introduce the evidence under the rule in three days. *Id.*

19.    Here, Vitol intends to introduce certified business records from seven third parties: (1) EEPB, P.C.; (2) IberiaBank; (3) International Bank of Commerce; (4) Chubb Lloyds Insurance

Company of Texas; (5) Cadence Bank; (6) DZ Jewelry, LLC; and (7) Veritex Community Bank. Vitol has obtained the affidavit of records custodians from each that track the language of FRE 803(6). On August 18, 2022, Vitol provided by email to the Debtor of its intent to offer the corresponding records under these affidavits—two days more than the five days' notice deemed sufficient by the Fifth Circuit. Moreover, all of the third party records relate to the account and finances of the Debtor and his companies, and indeed many of the documents were also produced by the Debtor and his company in this proceeding or in the state court litigation. As such, admitting these documents will cause no prejudice or surprise. Accordingly, such records are deemed self-authenticating and admissible without a sponsoring witness.

Dated: August 26, 2022

Respectfully submitted,

By: */s/ Michael P. Cooley*
    Keith M. Aurzada (SBN 24009880)
    Michael P. Cooley (SBN 24034388)
    Bradley J. Purcell (SBN 24063965)
    Lindsey L. Robin (SBN 24091422)
    **REED SMITH LLP**
    2501 N. Harwood, Suite 1500
    Dallas, Texas 75201
    T:  469.680.4200
    F:  469.680.4299
    kaurzada@reedsmith.com
    mpcooley@reedsmith.com
    bpurcell@reedsmith.com
    lrobin@reedsmith.com

    and

    Michael H. Bernick (SBN 24078277)
    Mason W. Malpass (SBN 24109502)
    **REED SMITH LLP**
    811 Main Street, Suite 1700
    Houston, TX 77002
    T:  713.469.3834
    F:  713.469.3899
    mbernick@reedsmith.com
    mmalpass@reedsmith.com

    *Attorneys for Vitol Inc.*

## CERTIFICATE OF SERVICE

    I certify that on August 26, 2022, a true and correct copy of the forgoing document was served via the Court's Electronic Case Filing (ECF) system to all parties registered to receive electronic notices in this adversary proceeding, including counsel for the Defendant.

        */s/  Michael P. Cooley*
        Keith M. Aurzada