```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE SOUTHERN DISTRICT OF TEXAS

 3                           HOUSTON DIVISION

 4   VITOL INC.                      §     CASE NO. 21-6006
                                     §     HOUSTON, TX
 5   VERSUS                          §     FRIDAY,
                                     §     AUGUST 26, 2022
 6   ARTHUR JACOB BRASS              §     2:31 P.M. TO 2:57 P.M.

 7                                 MOTION

 8            BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                    UNITED STATES MAGISTRATE JUDGE
 9
                               APPEARANCES:
10

11        FOR THE PARTIES:              SEE NEXT PAGE

12        COURT REPORTER:               ZILDE MARTINEZ

13        COURT CLERK:                  ZILDE MARTINEZ

14

15

16

17

18

19

20

21                      TRANSCRIPTION SERVICE BY:

22                      Veritext Legal Solutions
                      330 Old Country Road, Suite 300
23                          Mineola, NY 11501
                   Tel: 800-727-6396 ▼ www.veritext.com
24
          Proceedings recorded by electronic sound recording; transcript
25                  produced by transcription service.
```

```
 1                              APPEARANCES:

 2

 3   FOR THE PLAINTIFF:           REED SMITH LLP
                                  Keith Aurzada
 4                                2850 N. Harwood Street
                                  Suite 1500
 5                                Dallas, TX 75201
                                  469-680-4211
 6

 7   FOR THE DEFENDANTS:          WALKER & PATTERSON, PC
                                  Miriam Goott
 8                                PO Box 61301
                                  Houston, TX 77208
 9                                713-956-5577

10
                            (APPEARING TELEPHONICALLY)
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          HOUSTON, TEXAS; FRIDAY, AUGUST 26, 2022; 2:31 P.M.

2          THE COURT:  Okay, good afternoon, everyone.  This is

3    Judge Lopez.  Today is August 26th.  I'm going to call the 2:30

4    hearing into an emergency motion to quash a subpoena in Vitol

5    v. Brass.  Let me go ahead and take appearances.  Who wishes to

6    make an appearance on behalf of the Plaintiff, Vitol Inc.?  Mr.

7    Aurzada, you're on mute.

8          MR. AURZADA:  Good afternoon, Your Honor, Keith

9    Aurzada and Michael Cooley on behalf of Vitol, Inc.  Thank you.

10          THE COURT:  Okay.  Good afternoon.  Ms. Goott, I see

11    you there.  Good afternoon.

12          MS. GOOTT:  Good afternoon, Judge.

13          THE COURT:  Okay.  Anyone wish to make an appearance

14    on behalf of Zadok?

15          MR. ROBIN:  Yes, (indiscernible).  Oh I'm sorry.

16    Yes, this is Jeffrey Robin.  I am Counsel for Zadok.

17          THE COURT:  Okay.

18          MR. ROBIN:  And Mr. Segev Zadok is also joining

19    today's hearing.

20          THE COURT:  Okay, good afternoon to both of you.

21    Anyone else wish to make an appearance?

22          MR. BEATTY:  Yes, Your Honor.  Max Beatty on behalf

23    of the Trustee.  (indiscernible) the Trustee is here with me

24    today.  Given the fact that (indiscernible) an issue or the

25    issue raised was about the subpoena that we sent, we thought we

1    would appear in case (indiscernible).

2              THE COURT:  Okay.  Thank you.  Okay, Mr. Robin, you

3    filed the motion, you get to go first.

4              MR. ROBIN:  Zadok received service of this subpoena

5    yesterday in the early afternoon.  I was retained shortly

6    thereafter and immediately contacted both Plaintiffs and

7    Counsel with respect to this subpoena.  We have a trial set on

8    August 30th.  And I informed both Plaintiffs and Defendants

9    that Zadok was seeking to quash the subpoena on an emergency

10   basis given the constraints between now and the trial.

11             Three business days' notice to comply with the trial

12   subpoena that was served completely by surprise to Zadok, and

13   for the reasons we expanded upon in our motion, we believe that

14   there are bases to quash the subpoena for undue hardship and

15   inconvenience expense.  And due to the lack of time to comply.

16             In addition, Zadok has produced documents in this

17   case back in July, July 28th.  There is no reason why Plaintiff

18   could not have subpoenaed Zadok to appear at trial after they

19   had received service of those documents, or even earlier, when

20   the Plaintiffs knew of this trial setting as early as July of

21   this year, because the trial order was agreed upon and

22   submitted for entry and it was signed by the Court on July

23   19th.

24             So it's perplexing to Zadok why the Plaintiff waited

25   until three business days before the trial setting to serve a

1   trial subpoena.  At all times, Zadok has cooperated with the

2   document requests.  There's been no suggestion that Zadok

3   wouldn't cooperate in any discovery in execution of a business

4   records affidavit.

5          And Mr. Zadok is here to testify as to those issues

6   and to serve his receipt of service and subpoena.  Mr. Zadok is

7   scheduled to travel on a business trip starting on Monday, and

8   he returns from that trip out of state, he's returning late in

9   the evening after hours on Tuesday August 30th, and the trial

10  has already begun.  And he's already incurred expenses with his

11  trip.

12         And Mr. Zadok will have no time between now and the

13  trial to get prepared with Counsel because he's getting ready

14  for his trip.  And so, for those reasons, the others that we

15  have provided in our emergency motion, we believe this does

16  constitute an emergency.  The subpoena should be quashed.

17         And we'd be happy to further discuss any other

18  concerns.  We do want to cooperate, but at the same time, we're

19  just putting this -- we were placed in this situation not by

20  our own doing, but by the circumstances that were presented on

21  us.

22         THE COURT:  Okay, let me -- Ms. Goott, you also filed

23  a response in support of the motion to quash.  I think it makes

24  sense for you to go and then I'll hear from the other side.  So

25  I have everyone's papers, I'm just giving everyone an

1    opportunity.  Thanks everyone for filing their responses on

2    very short notice.

3         But I thought it made sense to hold the hearing today

4    because if Mr. Zadok is going to fly out on Monday or scheduled

5    to be out, (indiscernible) day to make a decision, so I thought

6    it made sense.  So let me hear from you, Ms. Goott, and then

7    I'll turn to Vitol.

8         MS. GOOTT:  Thank you, Judge.  And can you hear me

9    okay?  I'm hearing a little bit of static.

10        THE COURT:  Just fine.  Thank you.

11        MS. GOOTT:  Great.  And I don't want to waste

12   anybody's time and repeat what was in my response, but I

13   appreciate Zadok's position that it's untimely.  It's three

14   days before trial when we've had this date set for well over a

15   month.  And furthermore, the docket shows that Vitol had time

16   to serve other parties with trial subpoenas with sufficient

17   notice, and they didn't do it here.

18        And in their response, Vitol talks about how this

19   isn't their fault, that they shouldn't be held accountable to

20   comply with these rules.  But the reality is, they caused this

21   problem themselves.  They have known about this issue that they

22   claim for quite a while and to serve them three days before

23   doesn't comply with the rules.

24        But I think that we need to take one step back and

25   before we even get to the issue of whether or not it would be

1   an undue burden on Zadok and whether it was timely filed.  The

2   issue is, is that none of this gets to come in anyway.  They

3   didn't disclose Zadok in the initial disclosures.

4        They said, hey, we didn't know.  We didn't find out

5   about this until two months ago.  Okay.  Assume that's true.

6   If they only found out about it two months ago, these lawyers

7   know exactly what to do because they've done it before in this

8   adversary and they come to the Court and say, Judge, we just

9   found out Zadok is a crucial witness, open discovery.

10        But discovery has been closed since February.  They

11   did that with Mr. (indiscernible).  They came to Court without

12   evidence and said, please, let us tell you why this is so

13   important.  And the Court granted it.  They know how to do it,

14   but they didn't do it here.  They didn't come to Court and say,

15   Judge, we just found this out.

16        They weren't even the ones that served the subpoena,

17   and that's fundamentally unfair.  The Trustee who is not a

18   party to this case serves the subpoena, gets documents, and

19   then takes these alleged documents and shares them with the

20   Plaintiff.  And the Plaintiff says, now I'm going to use

21   documents that I received after the close of discovery that

22   I've known about for a few months?

23        And then they send me a notice, oh, we're going to

24   use the business records affidavit.  We don't get to use a

25   business records affidavit.  We don't get to bring a witness

1   and you sure don't get to produce documents that were obtained

2   after discovery was closed.  It's such an important thing.  You

3   would have come to this Court and said, Judge, this is what we

4   think.

5          Let us talk to Mr. Zadok.  Let us find out who made

6   these purchases.  But what do they do?  They file a response

7   today.  And they put all of the facts that are not admissible

8   before the Court.  It's so inappropriate for them to file a

9   pleading and say, Judge, we're going to tell you everything

10  that we think that this guy did was wrong without him having to

11  comply with the rules of evidence, without having to comply

12  with the rules of procedure, because now you know what they

13  think without a witness.

14         But Rule 37(c) says that this does not come in.  And

15  then it cannot be permitted to come in at trial when it wasn't

16  disclosed.  Initial disclosure specifically states, if you find

17  something out, supplement it.  They didn't do any of it.  And

18  to come in three days before trial and say, surprise, we're

19  going to have Mr. Zadok come in, we didn't get to depose Mr.

20  Zadok.

21         I couldn't have.  Discovery was closed.  They didn't

22  even depose Mr. Zadok.  But what did they tell you in their

23  response?  Judge, it's not our fault.  Really?  Whose fault is

24  it that we didn't do this timely?  It's Miriam Goott's fault.

25  She's trying to -- I don't even remember the language that they

1   used, but it must be my fault because I'm asking them to comply

2   with the rules of evidence.  It's totally inappropriate.  And I

3   ask the Court, I support Zadok's motion to quash.  Thank you.

4            THE COURT:  Thank you.  Anything from Vitol?

5            MR. AURZADA:  Your Honor, thank you very much.  Keith

6   Aurzada for Vitol.  First, I can totally appreciate where Mr.

7   Robin is coming from.  Zadok really doesn't need to come to

8   testify at the trial because the business records affidavit is

9   sufficient all by itself.  And I'm going to address that in a

10  minute.

11           I'm going to address a couple of other things first.

12  First of all, there can be no argument that there is surprise

13  here.  Mr. Brass himself engaged in the transaction in 2017.

14  He knows about these records.  These are his records.  These

15  are records that reflect his own transaction.  So it's not like

16  an unfair surprise.  The issue of disclosure is interesting me,

17  Your Honor, because Mr. --

18           THE COURT:  Well, the issue is unfair surprise to Mr.

19  Zadok about appearing at trial, all right?  That's what I'm

20  focused on.  I'm just telling everyone now.

21           MR. AURZADA:  Okay.  So --

22           THE COURT:  Because that's the motion in front of me.

23           MR. AURZADA:  I'm going to say one other --

24           THE COURT:  In other words, that's the motion that's

25  before me, right?  That's what Mr. Robin filed, so that's where

1   my focus is.

2         MR. AURZADA:  Okay.  Then Your Honor, this is where I

3   would focus your attention, then.  Rule 90211 talks about the

4   admission of business records affidavits.  The Fifth Circuit

5   has said consistently that certificates from a records

6   custodian attract the language of Rule 8036 nearly word for

7   word render the records self-authenticating that US versus --

8   I'm going to butcher the last name -- Ayelotan, 917 F.3d 394

9   (indiscernible) cite to Page 402 Fifth Circuit, 2019.

10         When accompanied by a custodial certification, the

11   live testimony of the custodian for another witness is not

12   required to admit the records.  That would alleviate Mr. Zadok

13   from having to testify at the trial.  What are we reacting to?

14   We're reacting to Ms. Goott's statement at the pre-trial day,

15   the day before yesterday that she wants to cross-examine the

16   witness but sign the affidavit.

17         Presumably, she has some cross-examination that's

18   going to elicit a response from Mr. Zadok that the records he

19   produced are not his business records.  Now, if that's true and

20   she can elicit that testimony, these records won't come in

21   because that would mean that the affiant was not telling the

22   truth when he signed it.

23         It -- this is important evidence to my client, Your

24   Honor.  This is important evidence that meets one of the

25   (indiscernible) factors.  How did we find out about this

1    evidence?  We received a call or learned of this after

2    discovery had closed and they were records of the affiliate

3    Debtor GCAC in storage unit, where (indiscernible) from my

4    office flew to Houston and looked at the records with Mr.

5    Beatty.

6              Ms. Goott was invited to that, to look at those

7    records.  The Trustee, based upon that issue to subpoena

8    (indiscernible) end of July, we received the business records

9    affidavit plus 109 pages from (indiscernible).  Now in the year

10   '26, disclosures, Mr. Brass did not disclose this.

11             My client would've had no way of knowing that these

12   transfers existed or that the scope of the records.  And so, we

13   (indiscernible) witness and exhibit list like the pre-trial

14   order said.  And by the way, on that score, the Rule 26 talks

15   about when do you disclose unless -- and the specific word is,

16   wording is, unless otherwise ordered by the Court.  And so, we

17   did that.

18             So to the main thrust here, I get where Mr. Robin is

19   coming from.  Apparently Mr. Zadok is available to testify

20   right now.  I'd be willing to have him testify to these

21   business records right now and the he doesn't have to worry

22   about his trip.  Because all I'm going to ask him is did you

23   say the truth in your affidavit and are these your business

24   records.  And that's the end of my request for testimony.

25             We can do that right now.  We don't even need to wait

1    for trial.  And so, with that, Your Honor, the trial subpoena

2    is appropriate.  This is evidence that the Court needs to hear.

3    And that's all I have to say, Your Honor, that plus what's in

4    our papers.  Thank you.

5              THE COURT:  Thank you.  Anyone else wish to be heard?

6              MS. GOOTT:  May I respond, Your Honor?

7              THE COURT:  Sure.  Yes.

8              MS. GOOTT:  Mr. Aurzada did not answer your question.

9    There is no response to why Mr. Zadok was served three business

10   days before trial.  All he wants to argue is why you should

11   allow a business records affidavit, but that also is not before

12   the Court.  In fact, the Court already rules that we're going

13   to deal with those at trial.  We have no evidence that the

14   documents that were produced were even business records.

15             They just want you to assume that.  But what they

16   don't address is the fact that these documents that they want

17   in were produced far after the discovery cutoff, wholly

18   prejudicial, and no response as to why this was served three

19   days before trial when they knew about the trial date for over

20   a month, where they served other witnesses, other third party

21   banks with trial subpoenas, but they didn't serve Zadok.  Thank

22   you, Judge.

23             THE COURT:  Anyone else wish to be heard?  Okay.  So

24   before the Court is an emergency motion to quash the subpoena

25   for trial.  Was filed by DZ Jewelry LLC.  It was filed earlier

1    today.  The Court is going to grant emergency consideration of

2    the motion in light of a pending trial scheduled.  Today's

3    Friday August 26th.  A trial is scheduled for next Tuesday

4    August 30th.

5            So I'm going to find the Court has jurisdiction to

6    consider this motion, that's certainly a core proceeding as it

7    relates to an adversary regarding the dischargeability of debt.

8    Ad hoc seeks to quash a subpoena that was -- no party disputes

9    was received by Zadok on August 25th.

10           The ad hoc seeks to quash this subpoena under Federal

11   Rule of Civil Procedure 45, which I would note is made

12   applicable in this adversary proceeding under Federal Rule of

13   Bankruptcy Procedure 9016.  There's no question that the trial

14   is scheduled to begin next Tuesday and that Vitol has provided

15   the ad hoc approximately three business days' notice of a trial

16   to testify.

17           Mr. Zadok has indicated that no party has contested.

18   Mr. Zadok is going to be out of town beginning -- and is

19   scheduled to arrive back in town on Tuesday August the 30th,

20   which is the day the trial commences.  So that's kind of where

21   we are.  So what does the law have to say kind of about where

22   things stand.

23           To that, I'd note that under Federal Rule of Civil

24   Procedure 45, again, which is made applicable under Rule 9016,

25   the party may serve a subpoena, all right, that commands a

```
 1    nonparty to testify to attend and to testify at a trial.  And
 2    that subpoena is issued under Rule 45(c).
 3           Certainly, this subpoena was issued, and there's no
 4    question about that.  So the question is whether this can be
 5    quashed.  This ad hoc points to two points here.  And I want to
 6    make sure -- I'm just looking at your pleading to make sure
 7    I've got it -- I have it right.
 8           Justify -- they're objecting to the timing and to the
 9    undue burden standard.  I know that Rule 45(d)(3)(a) motion the
10    Fifth Circuit has held.  If you look at the (indiscernible),
11    the Royal Dutch Petroleum Company decision 392 F.3d 812 of
12    Fifth Circuit 2004 case.  And a motion to quash to modify a
13    subpoena, the Northern Party has the burden of proof.
14           They certainly believe that there's been satisfaction
15    of that, right?  Looking at the notice that has been provided
16    under the circumstances and the travel schedule, I certainly
17    believe that there has been certainly there.  And on a motion,
18    there's two kind of points that, as I understand Mr. Robin is
19    arguing on behalf of his client.
20           One is the unreasonable notice, and two, the undue
21    burden standard here.  And I think he satisfies both. I think
22    providing three days' notice of a subpoena to testify in a
23    trial is certainly very little notice and there are cases in
24    the Fifth Circuit.  I'm happy to cite some if you need some,
25    providing very short notice of a time to testify in trial is
```

1    unreasonable and overly burdensome and oppressive and three

2    days' notice.

3            And apparently receiving it on a Thursday to come

4    testify in a trial, in a contested trial on a Tuesday is

5    certainly burdensome.  (indiscernible) is an undue burden.  No

6    question about that and no one should be forced to fly back on

7    a Tuesday and show up and testify but show up and testify on

8    one day and then give a testimony on the next day.

9            When do you have time to prepare with your counsel?

10   When do you have time to think about these issues?  Mr. Aurzada

11   notes that he only wants him for a specific purpose, but you

12   know, that doesn't mean that a witness shouldn't have the

13   appropriate time to prepare for a testimony at trial.  So I'm

14   going to grant the motion to quash.

15                   (Motion to quash granted).

16           THE COURT:  Apparently it -- testimony is not really

17   even needed because parties are going to make a business record

18   argument.  That's going to be reserved for trial.  And as well

19   as Mr. Goott's argument that it doesn't come in under 7037.  So

20   everybody's rights are preserved at trial.

21           I would note that the Fifth Circuit case law, and if

22   you look at the (indiscernible) case, it also notes that you

23   know, modification of a subpoena is also appropriate.  But the

24   trial is currently scheduled for two days.  If the trial goes

25   out further to another day, and maybe the subpoena could be

1    modified to permit trial on another date.

2              I'm not available on September 1st, Mr. Robin.  So

3    but your client won't have to show up on the 30th or the 31st.

4    If this gets pushed out to another date, maybe it's appropriate

5    to have your client.  But everybody's rights are going to be

6    preserved.

7              But before your client has to come forward and

8    testify, I think I would need to take up, and despite Ms.

9    Goott, you're going to have to tee the issue up if that's what

10   you want, whether it comes in or not, whether it --

11   (indiscernible) should be struck as a witness.  And I'm not

12   ruling on that one way or the other.

13             I'm just saying, I don't want a witness to come here

14   to testify in person and then if that issue is going to get

15   teed up, if the issue gets teed up, then either I'll deal with

16   it at trial and do the business records affidavit issue when we

17   meet next Tuesday or Wednesday.

18             And but if this gets pushed out and you know, he's

19   available, then I'll certainly entertain a motion to strike and

20   certainly give everyone the opportunity.  I do note, I'm a

21   little surprised that we're dealing with this at the 11th hour.

22   I do note that I did extend discovery.  And that was --

23   somebody filed a motion on a Tuesday to extend discovery and I

24   granted a motion on a Friday on three business days' notice.

25             So certainly work under (indiscernible).  That

1    doesn't mean that people don't have the right to do it.  I just

2    note that if anyone asks this Court for a hearing as it's

3    displayed under many hearings before this Court.  And Mr. Robin

4    now knows if you want a hearing, you'll get one, and you'll get

5    one on short notice when it makes sense.

6            So that's always been what we've been doing.  Maybe

7    it's not an issue.  Maybe Vitol wins on the business record

8    affidavit.  Maybe they don't.  I will be honest with everyone.

9    And I've done it intentionally.  I have not reviewed any

10   exhibits.  I haven't looked at one of them.

11           I'm going to take them up, and if they come up, I

12   don't want to -- I'm only going to review the evidence that

13   gets admitted into the record and look to file stuff on the

14   docket.  I will see what Vitol presents in the form of their

15   evidence and I will review it at that time so everyone's rights

16   are preserved.

17           But I'm going to grant a motion to quash, certainly

18   to testify as to the 30th and the 31st.  I believe that the

19   Fifth Circuit case law there is certainly an undue burden

20   there.  And I don't think modification on three business days'

21   notice is appropriate.  But if it goes further out, then maybe

22   that changes.  Mr. Robin, do you have any questions about my

23   ruling?

24           MR. ROBIN:  No, Your Honor.

25           THE COURT:  Does anyone have any questions?  Okay.

1     All right.

2              MR. ROBIN:  No, Your Honor.

3              THE COURT:  Thank you.  That's my ruling.  I'll enter

4     a short order on the docket.  Folks continue to talk.  I really

5     strongly encourage it.  All righty.  Thank you.  We'll see each

6     other on Tuesday.

7              MAN:  Thank you, Judge.

8         (Hearing adjourned at 2:57 P.M.)

9                              *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                            I N D E X

2

3                              RULINGS

4                                                   Page      Line

5    Motion to quash is GRANTED                      15        15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 29, 2022
```