9/12/2019 12:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36752553
By: Lisa Thomas
Filed: 9/12/2019 12:23 PM

CAUSE NO. 2018-31578

| | |
|---|---|
| GULF COAST ASPHALT COMPANY, LLC<br><br>*Plaintiff*<br><br>v.<br><br>VITOL INC.,<br><br>*Defendant* | IN THE DISTRICT COURT OF<br><br>HARRIS COUNTY, TEXAS<br><br>295TH JUDICIAL DISTRICT |

## COUNTERCLAIMANT AND THIRD-PARTY PLAINTIFF VITOL INC.'S SECOND AMENDED COUNTERCLAIMS, THIRD-PARTY PETITION, AND APPLICATION FOR INJUNCTIVE RELIEF

Counterclaimant and third-party plaintiff Vitol Inc. ("**Vitol**") files these Second Amended Counterclaim and Third-Party Petition against plaintiff and Counter-Defendant Gulf Coast Asphalt Company, LLC ("**GCAC**") and third-party defendants Arthur J. Brass ("**Brass**") and Trifinery, Inc. ("**Trifinery**") (Brass and Trifinery collectively "**Third-Party Defendants**").

## RELIEF

1. Counterclaimant and third-party plaintiff Vitol seeks monetary relief over $1,000,000 and non-monetary relief. Tex. R. Civ. P. 47(c)(5).

## PARTIES

2. Vitol is a Delaware corporation with its principal place of business at 2925 Richmond Avenue, Houston, Texas 77098 and has already entered an appearance.

3. GCAC is an Alabama corporation with its principal place of business at 1990 Post Oak Blvd., Suite 2400, Houston, Texas 77056 and has already entered an appearance.

4. Brass is an individual residing at 2508 Pelham Drive, Houston, Texas 77019. He may be served at his residence or wherever he may be found.



VITOL EXHIBIT 86
Adv. No.: 21-06006 8/30/2022

5. Trifinery is a Texas corporation with the same principle place of business as GCAC at 1990 Post Oak Blvd., Suite 2400, Houston, Texas 77056. Trifinery may be served through its registered agent, Joseph Mattingly Jr., at 1990 Post Oak Blvd., Suite 2400, Houston, Texas 77056.

## JURISDICTION

6. The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

## VENUE

7. Venue is proper in Harris County because the facts giving rise to Vitol's causes of action occurred in Harris County. Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). Additionally, GCAC and Trifinery's respective principal offices are in Harris County, and Brass resides in Harris County. *Id*. § 15.002(a)(2) and (3).

## SUMMARY OF RELIEF REQUESTED

**A. Factual Background**

8. Beginning in 2017, Vitol provided millions of dollars in bridge financing, product, and hedging services to GCAC based on GCAC and Brass's representations and requests. In exchange for the bridge financing and hedging services, Brass/GCAC represented and promised that Vitol would be repaid the amounts loaned with interest.

9. GCAC is owned 50% / 50% by two members: Trifinery and Joyce Brass, Brass's mother. Brass is the President of GCAC. Trifinery is a holding company solely owned by Brass, who is its only officer. At all relevant times, Brass exercised and still exercises complete control over GCAC and Trifinery. A former Brass associate recently raised the alarm and alerted Vitol that Brass has been using his entities to perpetrate a fraud in which Brass has illegitimately

2

Certified Document Number: 87099595 - Page 2 of 13

siphoned money held by his entities for his personal use. On information and belief, funds provided by or owed to Vitol have been misappropriated by Brass through his entities.

10. Although GCAC/Brass made a few payments to Vitol in late 2017 and early 2018 pursuant to the financing arrangement and as an inducement to obtain more funds from Vitol, GCAC/Brass subsequently failed and refused to repay approximately $9 million in bridge financing and $6 million in hedging costs despite repeated demands from Vitol. The debt remains due and interest continues to accrue. During the period of time in which Brass pretended to discuss his debt with Vitol, on information and belief, Brass fraudulently transferred money from GCAC to himself, using GCAC as his own personal checkbook. This despite the fact that the money held by GCAC had been provided by Vitol and/or was owed to Vitol.

11. GCAC, Brass, and their associates made material misrepresentations to induce Vitol to provide these millions of dollars in bridge financing, product, and hedging services. According to a former Brass associate, Brass siphoned funds from GCAC for no legitimate business purpose. On information and belief, this money was used by Brass to fund his lavish lifestyle. GCAC and Brass either knew GCAC would be unable to repay and/or had no intention to repay. The statements made to Vitol were false when made or were made recklessly without knowledge of their truth and Vitol relied on such statements to its detriment.

12. Upon information and belief, GCAC has failed to repay Vitol because of a lack of financial resources and inability to pay its debts and obligations. Vitol's recent investigations have similarly indicated Counter-Defendant and Third-Party Defendants are insolvent or are likely to become insolvent because they are not paying their debts when due. Vitol has learned through its investigation that Vitol is not the only party aggrieved by Counter-Defendant and Third-Party Defendants' inability to pay debts timely.

Certified Document Number: 87099595 - Page 3 of 13

13. Upon information and belief: (i) Brass has been using GCAC and Trifinery as alter egos for his own illegitimate and fraudulent purposes; (ii) GCAC, Brass, and associated entities and individuals have comingled funds and have ignored corporate distinctions; (iii) at Brass's direction through his role as President, beneficial owner, and de facto member of GCAC, GCAC has been utilized to funnel significant funds to Brass and/or and other insiders/related entities with intent to hinder, delay, or defraud GCAC's creditors, including Vitol; and (iv) the funds Brass misappropriated are traceable to transactions financed by Vitol and were used by Brass for his own direct and personal benefit and to shield GCAC's assets from collection.

**B. Breach of Contract**

14. Vitol incorporates by reference the factual statements set forth above.

15. GCAC and Vitol had an agreement by which Vitol provided bridge financing, product, and hedging services to GCAC that GCAC was obligated to repay with interest.

16. GCAC breached its agreement with Vitol by refusing to repay approximately $9 million in bridge financing and $6 million in hedging costs.

17. Vitol has suffered damages of approximately $15 million, not including interest, which continues to accrue, and consequential damages.

**C. Fraud**

18. Vitol incorporates by reference the factual statements set forth above.

19. GCAC and Brass made material misrepresentations to induce Vitol to provide millions of dollars in bridge financing, product, and hedging services that they either knew GCAC would be unable to repay and/or had no intention to repay.

20. GCAC and Brass's statements were false when made or were made recklessly without knowledge of their truth and Vitol relied on such statements to its detriment.

Certified Document Number: 87099595 - Page 4 of 13

21. As a result of GCAC and Brass's misrepresentations, Vitol has suffered damages in the amount of approximately $15 million. In addition to its actual damages, Vitol seeks an award of exemplary damages and the imposition of a constructive trust.

**D. Quantum Meruit**

22. Vitol incorporates by reference the factual statements set forth above.

23. Vitol provided valuable bridge financing, product, and hedging services to GCAC and GCAC accepted Vitol's bridge financing, product, and hedging services. GCAC had notice that Vitol expected to be compensated for its bridge financing, product, and hedging services. Vitol is owed approximately $15 million as the reasonable value of its services.

**E. Conversion**

24. Vitol incorporates by reference the factual statements set forth above.

25. Counter-Defendant and Third-Party Defendants have wrongfully exercised dominion over personal property belonging to Vitol. Vitol seeks the return of its property or payment received by Counter-Defendant and Third-Party Defendants.

**F. Declaratory Judgment: Proposed JMA is not an Enforceable Contract**

26. Vitol incorporates by reference the factual statements set forth above.

27. A dispute has arisen between GCAC and Vitol concerning the Proposed JMA. Vitol requests that the Court enter a judgment declaring that the Proposed JMA is not an enforceable contract between Vitol and GCAC; or, in the alternative, that GCAC may not recover the damages its seeks under the Proposed JMA.

28. Vitol is entitled to recover its reasonable and necessary attorney's fees in relation to the declaratory judgment sought against GCAC.

Certified Document Number: 87099595 - Page 5 of 13

**G.  Fraudulent Transfer under Chapter 24 of Texas Business & Commerce Code**

29. Vitol incorporates by reference the factual statements set forth above.

30. GCAC is owned by two members: Trifinery, Inc., a holding company owned solely by Brass, and Joyce Brass, Brass's mother.

31. Upon information and belief, GCAC and Brass have comingled funds.

32. Upon information and belief, GCAC is subject to Brass's complete control. At Brass's direction, GCAC has transferred significant funds out of its accounts to Brass with intent to hinder, delay, or defraud GCAC's creditors.

33. Upon information and belief, despite Vitol's claim for approximately $15 million, GCAC and Brass have transferred these comingled funds and/or other property with the intent to hinder, delay, and/or defraud creditors of Counter-Defendant and Third-Party Defendants, including Vitol. Brass and GCAC are insiders and affiliates of one another, and transfers have been made amongst those insiders and affiliates after Vitol's claims arose against GCAC. In other words, Brass transferred the funds and/or property with the intent of preventing Vitol from collecting amounts owed by Counter-Defendant and Third-Party Defendants.

34. Upon information and belief, Counter-Defendant and Third-Party Defendants are insolvent because they are not paying their debts when due. Vitol has learned through its investigation that Vitol is not the only party aggrieved by Counter-Defendant and Third-Party Defendants' inability to pay debts timely.

35. As a result of Counter-Defendant and Third-Party Defendants' fraudulent transfer, Vitol has suffered damages.

Certified Document Number: 87099595 - Page 6 of 13

36. Vitol seeks to avoid all fraudulent transfers between GCAC, Brass, Trifinery, Joyce Brass, and other related persons/entities to the extent necessary to satisfy Vitol's claims.

37. Vitol is entitled to recover costs and reasonable and necessary attorney's fees under Section 24.013 of the Texas Business & Commerce Code.

**H. Unjust Enrichment**

38. Vitol incorporates by reference the factual statements set forth above.

39. Counter-Defendant and Third-Party Defendants have been unjustly enriched in the amount of approximately $15 million by uncompensated bridge financing, product, and hedging services provided by Vitol. Equity demands that this amount be repaid to Vitol by Counter-Defendant and Third-Party Defendants. Vitol also seeks a constructive trust on any funds and/or proceeds still held by Counter-Defendant and Third-Party Defendants.

**I. Attorney's Fees**

40. Vitol incorporates by reference the factual statements set forth above.

41. As a result of GCAC's breach of contract, Vitol has incurred and continues to incur reasonable and necessary attorneys' fees.

42. Vitol is entitled to recover its reasonable and necessary attorneys' fees from GCAC under Tex. Civ. Prac. & Rem. Code 38.001.

43. Vitol is also entitled to recover costs and reasonable and necessary attorney's fees from Counter-Defendant and Third-Party Defendants under Section 24.013 of the Texas Business & Commerce Code and the Texas Declaratory Judgment Act.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTIONS

44. Vitol incorporates by reference the factual statements set forth above.

45. Based upon the above-described facts, Vitol seeks a temporary restraining order and temporary injunction: (1) preventing GCAC from transferring property or making distributions to its members, Brass, or other related insiders/entities until after the resolution of this litigation, and (2) preventing Brass from transferring his property, by sale or otherwise, including his real property located in or around Hockley, Texas and all proceeds from any sale or transfer of that real property, unless and until Brass can establish that the funds used to purchase, pay for, or renovate such property are not traceable to Vitol. Vitol is entitled to recover the approximately $15 million of value it provided Counter-Defendant and Third-Party Defendants, and given the apparent insolvency of Counter-Defendant and Third-Party Defendants, an injunction is necessary to prevent the dissipation of Counter-Defendant and Third-Party Defendants remaining assets to frustrate collection.

46. Section 24.008(a)(3)(A) of Tex. Bus. & Comm. Code allows creditors to obtain injunctive relief against further disposition by the debtor or a transferee, or both, of the assets transferred or of other property. *Sargent v. Al Saleh*, 512 S.W.3d 399 (Tex. App.—Corpus Christi 2016, no pet.) (citing Tex. Bus. & Comm. Code § 24.008(a)(3)(A)).

47. Section 65.011 of the Texas Civil Practice and Remedies Code allows a court to issue an injunction when a party performs or is about to perform an act relating to the subject of pending litigation and the act would tend to render the judgment in that litigation ineffectual, or if irreparable injury to real or personal property is threatened irrespective of any remedy at law.

48. To obtain injunctive relief, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). As the Texas Supreme Court has recognized, "[t]he purpose of a TRO is to preserve the status quo"

pending the Court's more considered evaluation of the need for temporary injunctive relief. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Further, an applicant for a temporary injunction does not have an adequate remedy at law if the non-movant party is insolvent. *Surko Enters. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no writ)).

49. Vitol has multiple causes of action against Counter-Defendant and Third-Party Defendants as described above and it is probable Vitol will recover in this matter. Vitol provided Counter-Defendant and Third-Party Defendants with millions of dollars of bridge financing, physical product, and hedging services, approximately $15 million of which has not been repaid. Counter-Defendant and Third-Party Defendants made multiple payments to Vitol in late 2017 and early 2018 in recognition of their obligation to repay Vitol. Vitol has kept extensive records of such transactions and has provided these to Counter-Defendant and Third-Party Defendants, who still refuse to pay.

50. Previous discussions indicate that the reason for Counter-Defendant and Third-Party Defendants' failure to repay Vitol is the lack of financial wherewithal and inability to pay their debts and obligations. Upon information and belief, GCAC in particular has been unable to pay its debts when due. Vitol's recent investigations have similarly indicated Counter-Defendant and Third-Party Defendants are insolvent. Accordingly, Vitol is entitled to an injunction to prevent any further dispersal of Counter-Defendant and Third-Party Defendants' remaining assets.

51. If an injunction is not granted, the harm to Vitol is imminent because Counter-Defendant and Third-Party Defendants will likely dispose of property and assets that rightfully belong to Vitol. Further, if GCAC is allowed to make distributions to its members, including Brass, those funds may be lost forever. Vitol has no adequate remedy at law if it cannot recover what it is owed from Counter-Defendant and Third-Party Defendants due to their insolvency.

52. The risk of harm to Counter-Defendant and Third-Party Defendants by granting the injunction is minimal. The injunction is temporary in nature, limited in scope, and directed specifically to halt the disposal of what does not rightfully belong to Counter-Defendant and Third-Party Defendants. Granting the injunction will not interrupt GCAC's daily operations.

53. Vitol asks the Court to set its application for a temporary restraining order and temporary injunction for hearing and, after hearing, issue a temporary restraining order, temporary injunction against Counter-Defendant and Third-Party Defendants.

## PRAYER

Defendant Vitol Inc. respectfully requests that the Court render judgment for Vitol on its counterclaims, issues temporary injunctive relief, and that Vitol be awarded such other and further relief, both at law and equity, to which it may be justly entitled.

By: /s/ *Kenneth E. Broughton*
Kenneth E. Broughton
State Bar No. 03087250
Francisco Rivero
State Bar No. 24046725
Michael Bernick
State Bar No. 24078227
811 Main, Suite 1700
Houston, Texas 77002
Telephone: 713.469.3800
Facsimile:  713.469.3899
kbroughton@reedsmith.com
frivero@reedsmith.com
mbernick@reedsmith.com

*Attorneys for Defendant and Counterclaimant Vitol Inc.*

Certified Document Number: 87099595 - Page 10 of 13

<div style="margin-left: 20px; border-left: 1px solid #ccc; padding-left: 10px;">
Certified Document Number: 87099595 - Page 11 of 13
</div>

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon all known parties and counsel of record in accordance with the Texas Rules of Civil Procedure on this 12th day of September, 2019.

    William P. Maines
    Neil E. Giles
    HALL MAINES LUGRIN, P.C.
    Williams Tower, 64th Floor
    2800 Post Oak Blvd.
    Houston, Texas  77056-6125
    wmaines@hallmaineslugrin.com
    ngiles@hallmaineslugrin.com

                                */s/ Kenneth E. Broughton*
                                Kenneth E. Broughton

CAUSE N° 2018-31578

| | |
|---|---|
| GULF COAST ASPHALT COMPANY, LLC | IN THE DISTRICT COURT OF |
| *Plaintiff* | HARRIS COUNTY, TEXAS |
| v. | |
| VITOL INC., | 295TH JUDICIAL DISTRICT |
| *Defendant* | |

## VERIFICATION OF ERIC KUO

STATE OF TEXAS

COUNTY OF HARRIS

1. My name is Eric Kuo. I am over 21 years of age, of sound mind, and capable of making this affidavit. The facts stated in this verification are within my personal knowledge and are true and correct.

2. I am currently employed as a Fuel Oil Trader at Vitol Inc. ("**Vitol**") in Houston, Texas. I have been employed at Vitol for approximately 8 years and was employed at Vitol when the events mentioned in this affidavit occurred. I came to have knowledge of the facts stated herein as part of my employment at Vitol.

3. I have read the foregoing Second Amended Counterclaim and Third-party Petition and the material factual allegations, including paragraphs 8-13, are true and correct to my own personal knowledge.

Eric Kuo
Fuel Oil Trader
Vitol Inc.

SUBSCRIBED TO AND SWORN TO BEFORE ME on this 11th day of September 2019, to certify which witness my hand and seal of office.

_____
Notary Public in and for
The State of Texas



Certified Document Number: 87099595 - Page 13 of 13

2



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   August 17, 2022

Certified Document Number:        87099595 Total Pages:  13

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**